165 P.2d 125

MARTINEZ v. MARTINEZ.

No. 4921.

Supreme Court of New Mexico.
Jan. 11, 1946.

Adolf J. Krehbiel, of Clayton, for appellant.

Fred C. Stringfellow, of Raton, for appellee.

BRICE, Justice.

This is an action for divorce, in which is involved the right to the custody of the parties' infant son, a child under three years of age. The right to the custody of the child only is before us. It is asserted by appellant that because of certain unauthorized proceedings by the district court subsequent to the trial, the decree is fatally defective.

At the conclusion of the testimony the trial court announced:

"* * * in my opinion this girl is not a competent party to have the custody of the child; so I am going to give the boy (appellant) the divorce and the custody of the child goes to Mrs. Martinez (mother of appellant) until the further order of the court."

No judgment was entered at that time, but the child was delivered to Mrs. Martinez. Thereafter, on the 30th day of March, 1945, the trial court entered its decree, the part material to a decision here being as follows:

"The above entitled matter having come on regularly for hearing upon the merits in open court in Clayton, New Mexico on March 8, 1945, and the plaintiff having appeared by A. J. Krehbiel, his attorney, and defendant having appeared by D. A. Paddock and O. P. Easterwood, her attorneys, and the parties having announced ready for trial and the court having heard the testimony of the witnesses and having considered all the evidence adduced upon said hearing, and having called in the Court Welfare Worker, Miss Selma Azar, after the hearing was completed, to investigate carefully and report to the court what is the best interests of the welfare of the child involved in this action, and she now having carefully investigated the matter and made her very complete report in this matter, thereupon the court finds: * * *

"2. Plaintiff and defendant were married at Clayton, New Mexico, April 6, 1940.

"3. One child, a son, named Ernest Joe Martinez, was born to plaintiff and defendant, May 17, 1942, and said child was at the beginning of this hearing with the defendant. * * *

"7. This Court further finds from the report submitted to it after this hearing by Selma Azar, the welfare worker of this court that the custody of Ernest Joe Martinez, the minor child of the parties hereto,

should be awarded to the maternal grand-mother, Mrs Emilia Herrera, and his maternal grandfather, Marion Herrera, who at the present time live in Grenville, New Mexico, and who have brought him up from infancy, until the further order of this court, and until his mother, Rita H. Martinez, can show the court by a proper application and after a period of one year that it is for the best interests of said child that he should be placed in her care and custody.

"Whereupon the Court concludes as a matter of law,— * * *

"2. That plaintiff be and he hereby is awarded an absolute divorce from defendant. * * *

"4. That until the further order of this court Mrs. Emilia Herrera and her husband, Marion Herrera, of Grenville, New Mexico be and they hereby are, awarded the care, custody, and control of the plaintiff's and defendant's child, Ernest Joe Martinez, * * * and that Mrs. Emilia Martinez, who has heretofore been given the care, custody and control of said child until the further order of this court, deliver said child, together with his clothing and other personal effects, into the possession of Mrs. Emilia Herrera and Marion Herrera, or to the Sheriff of this county to be by him delivered over to the said Emilia Herrera and Marion Herrera forthwith.

"5. Plaintiff and defendant are hereby allowed an exception.

"Dated this 30th day of March, A. D. 1945."

After the case was closed by decree, and on the 23rd day of May, 1945, the trial court made the following statement in the record:

"The Court. After the court had rendered its tentative decision from the bench in this case, the attorney for the plaintiff later presented to the court a decree in the case, and thereupon and when the decree was presented to the court, the court stated to Mr. Krehbiel, attorney for plaintiff, that the court would not sign the decree until Miss Selma Azar, the Court Welfare Worker, had made a thorough investigation into the case and submitted her report to the court as to the best welfare of the child involved, and the court then stated to the attorney for the plaintiff that he would rely largely on the report of Miss Azar, and he also telephoned the attorney for the defendant at that time and advised him of these facts; and thereupon he requested Miss Selma Azar, Welfare Worker of this Court, to make a thorough investigation of this case looking to the best interests of the child, and make a thorough investigation as to the home surroundings both of the maternal grandparents and the paternal grandmother, and after she had investigated this case to submit her report to this court; and thereupon Miss Azar did make a thorough investigation into the case, and the child in the mean time and during the investigation was placed with the paternal grandmother without any formal order of the court; and then after Miss Azar had made said investigation, fully and fairly,

and she then made a report to this court. * * *"

Following this in the record appears the very complete report of Miss Azar, "The Court's Welfare Worker," showing a thorough investigation into the conditions surrounding the families of the parties to this suit, and the parties themselves, from which she concluded as follows:

"Ernest Joe Martinez should be with his maternal grandmother, Mrs Emilia Herrera, and his maternal grandfather, Marion Herrera, who have brought him up from infancy, and who love him deeply, until his mother, Rita Martinez, can show the court, after a period of about six months, or a year, that she has reformed, has worked steadily and assisted in the upkeep of her child, then she should be allowed to petition the Court for the full custody of her child."

Thereafter there appears in the record the following:

"The Court (Continuing): And thereupon the Court notified the respective attorneys of this report, and stated to the attorneys that he would sign the decree awarding custody of said child as had been recommended by Miss Selma Azar, and thereupon the attorney for the defendant prepared and submitted a decree, and the court advised the attorney for the plaintiff of this fact, and a copy of the decree was submitted to the attorney for the plaintiff, and thereupon the Court signed and decree herein on March 30, 1945."

The record of the trial does not disclose that the trial court notified counsel of his intention to have an investigation made by his welfare worker. It is only from a statement of the court incorporated in the record, made long after the decree was entered, that it appears any knowledge of this report was communicated to counsel, and then only by the statement that "the Court notified the respective attorneys of this report, and stated to them that he would sign a decree awarding the custody of the said child as had been recommended by Miss Selma Azar."

The statute, 1941 Comp. § 25-706, authorizing this action is as follows:

"In any suit for the dissolution of the bonds of matrimony, division of property, disposition of the children, or for alimony, the court * * *, on final hearing, * * * may set apart out of the property of the respective parties, such portion thereof, for the maintenance and education of their minor children, as may seem just and proper, and may make such an order for the guardianship, care, custody, maintenance and education of said minor children, or with reference to the control of the property of the respective parties to the suit, or with reference to the control of the property decreed or fund created by the court for the maintenance and education of said minor children, as may seem just and proper; and may modify and change any order in respect to the guardianship, care, custody, maintenance or education of said children, whenever circumstances render such change proper. Said district court shall have exclusive jurisdiction of all matters pertaining to said guardianship,

care, custody, maintenance and education of said children, and with reference to the property decreed or funds created for their maintenance and education, so long as they, or any of them, remain minors * * *."

From the statements of the learned trial judge in the decree and the fact that his announced decision at the close of the evidence was not followed, it is certain that Miss Azar's report was the basis of his decision to appoint the parents of the defendant as custodians of the child, although it had not been introduced in evidence, filed in the case, or its contents disclosed to counsel. We are impressed that a report such as the court acted upon in this case, made by an unbiased investigator, would assist materially in determining to whom should be given the custody of a child in such cases.

■ In some states it is provided by statute that such reports may be introduced in evidence, and considered in determining the issues, although recommendations contained therein are advisory only. Prouty v. Prouty, 16 Cal.2d 190, 105 P.2d 295. But we have no such statute. While the trial court has a large discretion in hearings involving the custody of minor children, that discretion is judicial, and subject to review in this court; and therefore must be based upon evidence introduced in the case. Cohn v. Scott, 231 Ill. 556, 83 N.E. 191, 121 Am.St.Rep. 342; In Re Henkle, 153 Or. 337, 56 P.2d 343. We do not mean to intimate that the trial court, when not satisfied with the evidence before him, cannot authorize an independent investigation of conditions, if in his judgment this would assist him in reaching a proper solution of the problem, as the controlling factor is the child's welfare. The Texas courts have so held in actions brought under a similar statute. Williams v. Guynes et al., Tex.Civ.App., 97 S.W.2d 988; Conley v. St. Jacques et al., Tex.Civ.App., 110 S.W.2d 1238; Williams v. Perry, Tex.Com.App., 58 S.W.2d 31.

But the witnesses should testify at a hearing before the court, or before a master appointed by the court, conducted as the law directs.

■ It was, obviously, error on the part of the trial court to determine the issues in this case upon a confidential report of his public welfare worker, based upon unsworn testimony, the contents of which were not evidence in the cause or disclosed to the parties.

■ That the appellant has no standing in this court because of his failure to object to the unusual proceedings for the determination of the issues in the case, or to in any manner call the court's attention to the error he now complains of, is settled by many decisions of this court. See Stacey v. Whalen, 33 N.M. 577, 273 P. 761.

■ We would exercise our authority to reverse this case and remand it for a proper trial, notwithstanding the state of the record, but for the fact that the appellant may at any time file an application to reopen the case if the trial court has erred in the disposition it has made of the child. We are constrained to leave the matter in

the hands of the district judge, with full confidence that he will exercise his authority to reopen the cause for further consideration if in his judgment it is for the child's welfare.

The judgment is affirmed. It is so ordered.

MABRY, C. J., and SADLER, BICKLEY, and LUJAN, JJ., concur.