Argued November 20, 1946; affirmed in part, reversed in part,
January 15, 1947

# NELSON *v.* NELSON
(176 P. (2d) 648)

*Francis F. Yunker,* of Portland, for appellant.

*Edward J. Clark,* of Portland (Tanner & Clark, of Portland, on brief), for respondent.

Before BELT, Chief Justice, and ROSSMAN, KELLY, BAILEY and BRAND, Justices.

BAILEY, J.   Plaintiff, Richard Nelson, and defendant, Katherine Nelson, were married on December 27, 1940.  On February 17, 1942, a son, James Craig Nelson, was born.  Thereafter and on or about the 25th day of May, 1943, Mrs. Nelson instituted a suit for divorce against her husband.  They were subsequently reconciled and resumed their marital relations.  That suit was dismissed.  This suit, in which plaintiff seeks a decree of divorce, was instituted by him in September, 1943.  Defendant filed an answer to the complaint, denying the allegations of misconduct charged against her, and a cross-complaint in which she asks for a divorce from plaintiff.  Both plaintiff

and defendant request the custody of the minor child. On August 4, 1944, defendant filed a supplemental cross-complaint to which plaintiff filed an answer and a supplemental complaint.

Trial was set for November 6, 1944. On that date the attorneys for the litigants entered into a stipulation which is, omitting the title of the court and cause and signatures of the attorneys, as follows:

"IT IS HEREBY STIPULATED by and between the parties hereto, through their respective counsel, that the court is authorized to have investigation made of the conditions in the present home of plaintiff and defendant for the purpose of ascertaining which party is entitled to the custody and control of James Craig Nelson, minor child of the parties hereto. Based upon the report to be returned to the judge of this court by his investigators, the court shall award the care, custody and control of said minor child as he deems proper and equitable. In the event that the care, custody and control of said minor child is awarded to the defendant, he shall make such award as he may deem equitable for the support of said minor child, and shall be authorized to make such regulations as to visitation as he may deem proper."

Thereupon the trial of the cause was postponed. On January 17, 1945, the court entered an order awarding the custody of the child to the plaintiff. This order, after setting forth the provisions in the stipulation, proceeds as follows:

"* * * and such an investigation having been made and a report filed, recommending that the custody of said child be given to the plaintiff with the actual custody and care with the mother of the plaintiff, and the court being fully advised,

"IT IS ORDERED that the plaintiff be, and

he hereby is, awarded the custody and control of said minor child, James Craig Nelson, the actual care to be in the mother of the plaintiff in her home, subject to the usual right of visitation at proper and suitable times on the part of the defendant, and that said child be forthwith placed by the defendant in the custody of the plaintiff pursuant hereto.''

After the entry of this order an amended supplemental cross-complaint was filed by defendant and an answer thereto by plaintiff.

For some unexplainable reason the court on October 13, 1945, signed and caused to be entered what is designated as a ''certificate'' in which it is recited that the cause came on regularly for trial on May 14, 1945; that plaintiff was represented by one of his present attorneys, and that the defendant appeared in person and was represented by her attorney. It then continues as follows:

''* * * An inquiry was at said time made by the court of counsel as to the issues to be tried, and it was indicated by counsel for the parties that the primary issue in said cause was the custody of the minor child, James Craig Nelson, and the parties stipulated in open court that the calling of witnesses touching said issue would be waived, and said issue could be submitted to the court and custody of said child awarded based upon the report of the investigators of the court to be thereafter appointed by the court, and the parties thereupon agreed to file and submit said stipulation in writing, which appears of record herein; that upon the entry of said stipulation, the further hearing of the above trial was recessed.''

Commenting on this certificate, plaintiff in his brief states that ''reference was erroneously made to the

trial set for May 14, 1945, instead of to the trial started and recessed November 6, 1944. It is not claimed that anything material to this case transpired on May 14, 1945.''

The cause came on for trial October 30, 1945, and on December 6 of that year the court entered a decree of divorce in favor of the plaintiff and awarded him the care and custody of the minor child. After setting forth the recitals hereinbefore quoted from the ''certificate'', the decree proceeds as follows:

''* * * and the trial thereof was resumed on the date first above mentioned [October 30, 1945] * * *; and thereupon evidence was received as submitted by the respective parties on the issues as framed by the pleadings of the respective parties, and the matter submitted to the court, and thereupon the court, having reviewed the evidence submitted and the investigation and report of an officer of said court of domestic relations, and the court finding from the evidence submitted that the equities are with the plaintiff and against the defendant, and that the plaintiff should be granted an absolute divorce from the defendant, and that by said report as well as the evidence submitted, the custody of the minor child of said parties should be continued in the plaintiff as ordered upon the coming in of said report, the actual care to be in the home and under the direction and care of the paternal grandmother, and the court being fully advised, * * *''

From this decree defendant has appealed. In her first assignment of error defendant claims that the court erred in granting to plaintiff, instead of to her, a decree of divorce. Each litigant accuses the other of cruel and inhuman treatment. No question is raised as to the sufficiency of the pleadings and we think it is unnecessary to state the charges and counter-charges

therein alleged. The issues involved are almost exclusively those of fact. Neither a detailed analysis nor a summary of the testimony would add anything to the "sum of legal knowledge garnered in the official reports".

■■ There is an irreconcilable conflict in the evidence. It has been examined and we are not satisfied that the decision of the judge, who heard the evidence and saw the witnesses, was erroneous and not supported by the record. In view of this conflict, the trial court's determination of the issues of fact is entitled to weight, and it is our opinion that that part of the decree granting a divorce to the plaintiff should be affirmed.

We shall consider the next two assignments of error together. They are, first, that the court "erred in decreeing that the order of January 17, 1945, constituted a final adjudication of the custody of the minor child herein", and second, that the court erred in giving the custody of the minor child to the plaintiff and refusing to award his custody to the defendant.

All the orders which have been referred to and the decree appealed from were signed by Honorable Fred W. Bronn, judge pro tempore. The orders, up to and including the so-called "certificate" of October 13, 1945, were signed by him as judge pro tempore under appointment by the governor pursuant to chapter 296, Oregon Laws 1941, as substitute for Honorable Donald E. Long, judge of the circuit court of the state of Oregon for Multnomah county, department of domestic relations, who was absent on military leave. All subsequent proceedings were heard by him as judge pro tempore under appointment of the presiding judge

of Multnomah county pursuant to stipulation of the parties litigant.

The order of January 17, 1945, was entered more than nine months before any evidence was introduced in the case. It was based upon the report and recommendation of the investigators of the department of domestic relations. Such report and recommendation were never filed in the case. Their contents were, at the time the order was made, and to this date are, unknown to anyone other than the investigators and the judge.

In the stipulation signed by the attorneys for the litigants, it is provided "that the court is authorized to have investigation made of the conditions in the present home of plaintiff and defendant for the purpose of ascertaining which party is entitled to the custody and control" of the minor child, and that based upon the report of such investigation the court shall award the custody of the minor child as it deems proper and equitable.

■ It is contended by defendant that the stipulation had reference to the custody of the child during the pendency of the suit, and not to his custody after the decree of divorce. In this connection our attention is directed to § 9-913, O. C. L. A., as amended by chapter 142, Oregon Laws 1945, which provides in part as follows: "After the commencement of a suit, and before a decree therein, the court, or judge thereof, may, in its, or his, discretion, upon proper showing of the necessity therefor, provide by order as follows: * * * 2. For the care, custody and maintenance of the minor children of the marriage during the pendency of the suit; * * *" And to § 9-914, O. C. L. A., which provides that whenever a marriage ·shall be declared void

or dissolved, the court shall have power to further decree for the future care and custody of the minor children.

There is no doubt that the parties, in entering into the stipulation, intended that the investigation was referable to the custody of the minor child upon the termination of the marriage contract. At the time the stipulation was signed the cause had been called for trial, and the hearing of the case was recessed for one purpose only, that of having the investigation made. There is nothing, however, in the stipulation which authorized the court to base his decision on a "secret report" of the investigators or to consider their recommendation in arriving at his decision.

The decree which supersedes the order of January 17, 1945, recites that the court finds "that by said report as well as the evidence submitted, the custody of the minor child of said parties should be continued in the plaintiff, as ordered upon the coming in of said report."

■ In providing for the future care and custody of minor children, the court is vested with large discretion, but such discretion is judicial and must be based upon evidence introduced in the case. His decision in the matter is subject to review in this court. *Bestel v. Bestel,* 153 Or. 100, 44 P. (2d) 1078, 53 P. (2d) 525; *Martinez v. Martinez,* 49 N. M. 405, 165 P. (2d) 125; *Wacker v. Wacker,* 279 Ky. 19, 129 S. W. (2d) 1043; *Cohn v. Scott,* 231 Ill. 556, 83 N. E. 191, 121 Am. St. Rep. 342.

■ It is stated in *Fewel v. Fewel,* 23 Cal. (2d) 431, 144 P. (2d) 592, that it "definitely is not the province of investigators to make a private factual report or

recommendation to the judge''. The court also quotes with approval from *Washburn v. Washburn,* 49 Cal. App. (2d) 581, 122 P. (2d) 96, as follows: " 'The power of decision vested in the trial court is to be exercised by a duly constituted judge, and that power may not be delegated to investigators or other subordinate officials or attaches of the court, or anyone else'.'' See also in this same connection *Bestel v. Bestel,* supra.

*Cohn v. Scott,* supra, arose upon a petition of the mother for a modification of the decree awarding the child's custody to its father. It appears from the facts, as reported in *Scott v. Cohn,* 134 Ill. App. 195, which was affirmed in *Cohn v. Scott,* supra, that during the hearing of the matter, the judge suggested that he would make a further investigation of the character of the man who the petitioner claimed was her husband, and it was agreed by counsel in the case that the court might do so. When the hearing was resumed two months later, the judge reported that he had caused an investigation to be made by the police department of Chicago but had made no personal inquiry. By this investigation he stated that he had satisfied himself that the man was all right and ''from what I hear of Cohn, I am very well satisfied that that child will not be injured in any way.'' Based partly upon this investigation and partly upon the evidence in the case the decree awarding the custody of the child to his father was modified. The appellate court reversed the trial court, and in affirming the appellate court the supreme court of Illinois said:

> ''It is contended, however, that counsel agreed after the evidence was heard in open court, that the chancellor himself should investigate the character of appellant and her home surroundings. It is very apparent from the record that he made no

personal investigation. He expressly so said, but stated that from what he heard of the appellant's husband he was satisfied the child would not be injured in any way if placed in the custody of the mother.

"* * * While a very large discretion must be permitted the chancellor hearing these cases, yet it must be a judicial discretion and subject to review on the evidence heard in open court. The agreement of counsel cannot bind as to the interests of the minor, which is the paramount question in this proceeding. If the chancellor could decide partly on investigation made out of court, then the whole decision might rest upon such an investigation and could not be reviewed. Such is not the law."

This case is cited with approval in *Wacker v. Wacker,* supra, and *Watkins v. Watkins,* 221 Ind. 293, 47 N. E. (2d) 606. It was held in *Des Chatelets v. Des Chatelets,* 292 Ill. App. 357, 11 N. E. (2d) 13, that it was error for the trial court to base its decision on the "confidential report from the social service department."

■ To what extent the court's decision as to the future custody of the child is based upon the secret report of its investigators is not disclosed by the record. That it is based, at least partly, on that report is made clear by the recitals in the decree. Therefore the decree as to his future custody is erroneous, and it should be reversed and the cause remanded to the circuit court for a determination of his future custody according to recognized legal principles.

The fourth and last assignment is to the effect that the "court erred in failing to grant the appellant attorney's fees and court costs and lump sum alimony."

■ In view of the fact that the plaintiff was granted

a decree of divorce, defendant was not entitled to an allowance of alimony. § 9-914, O. C. L. A.

■ On September 16, 1943, the circuit court ordered plaintiff to pay defendant $50 to apply on account of attorney's fees and $7 to apply on costs. These sums were paid. Later, and on August 17, 1944, the court ordered plaintiff to pay defendant the further sum of $50 to apply on account of attorney's fees. There was before the court at the time of making this order the affidavit of plaintiff, which was not denied, that defendant was earning not less than $43.20 per week. In making this order the court undoubtedly took the defendant's earnings into consideration. This last $50 has not, according to defendant's affidavit, been paid. No subsequent application was made to the circuit court for additional attorney's fees or court costs. On the record before us we can not say that the circuit court committed error in not allowing more attorney's fees and court costs to defendant.

■ A motion has been made in this court by defendant for an allowance to her of a reasonable amount for attorney's fees in the prosecution of this appeal. In the affidavit accompanying the application the defendant states that she is earning only $30 per week and that she has no other money with which to pay attorney's fees in this court. At the time this application was filed the plaintiff was in Detroit and an affidavit was filed by his mother in which it is stated that plaintiff's "health is poor and he has taken several jobs since the divorce but that he is so nervous and suffers such intense headaches that he has been unable to hold a job for any length of time." The evidence in the divorce proceedings discloses that several years ago the plaintiff received serious injuries in a motor-

cycle accident and since that time has been unable to work for any length of time. At the time of the trial plaintiff was paying his mother $50 a month for the support of the child. It also appears from the record that at the time plaintiff and defendant separated the defendant was given their joint savings account of $495, which she still had at the time of the trial. She also inherited some residential property in Portland from her mother. From the record in the case it does not appear that plaintiff has the ability to pay any more suit money or counsel's fees than was allowed by the circuit court and the defendant's costs and disbursements in this court. Therefore the defendant's motion is denied. *Arndt v. Arndt,* 146 Or. 347, 354, 25 P. (2d) 1119, 30 P. (2d) 1.

The decree appealed from, insofar as it grants a divorce to the plaintiff, is affirmed. It is reversed as to the custody of the minor child and the cause is remanded to the circuit court for further proceedings not inconsistent with this opinion. Defendant is entitled to her costs and disbursements in this court.