Argued February 28, affirmed June 18, 1952

# REA *v.* REA
245 P. 2d 884

*Joseph M. Devers, Jr.,* of Stayton, argued the cause for appellant. On the brief were Bell & Devers, of Stayton.

*Joe F. Walker,* of Rainier, argued the cause and filed a brief for respondent.

Before BRAND, Chief Justice, and HAY, LUSK, LATOURETTE, and WARNER, Justices.

## BRAND, C. J.

This case comes up on a motion for change of custody of a minor child. The parties were divorced in 1946 at the suit of the plaintiff. The defendant was awarded the custody of the child of the parties and the plaintiff father was directed to pay $40 a month for its support. Plaintiff now seeks custody of the child and relief from the order to pay support

money. The cause was tried and motion for modification of the original decree was denied. The plaintiff appeals.

The record presents one question of considerable public importance. At the close of the hearing, at which witnesses for both parties testified, the following transpired:

"THE COURT: * * * I should like to ask both parties and also counsel if they have any objection to the court making an independent investigation. I feel a great deal of responsibility in having to dispose of a case such as this because there is no adequate substitute the state or the court can provide for children to take the place and which they are entitled to, a home with conventional parents and love and affection. I feel that I might be able to do a little better and be better qualified if I made an independent investigation and have a report from a disinterested party with respect to the child.

"MR. DEVERS: Petitioner and plaintiff has no objection whatsoever.

"MR. WALKER: If the Court please, defendant has no objection whatsoever and in support of that I would like to urge the court to particularly talk to the child.

"THE COURT: If [with ?] that in the record, I will continue this until I am ready to dispose of it."

The trial in open court ended on 22 November 1950. On 9 March 1951 the court made and filed a temporary order which reads in part as follows:

"* * * After carefully considering all of the evidence introduced, including the present circumstances under which each of the parents of this child are now living, this court is of the opinion that the future welfare of the child will be best served if he is returned to the care and custody

of his mother, in accordance with the original decree herein. The motion to modify such decree will therefore be denied.''

The so-called temporary order was in the form of a letter to counsel, but it was filed in the records of the case by order of the court. Formal order denying the plaintiff's petition was made a few days later. In view of the deliberate statement of the court as to its intention to make independent investigation and to have a ''report from a disinterested party with respect to the child'', and in view of the statement in the temporary order more than three months later to the effect that the court had considered the ''present circumstances under which each of the parents  *  *  * are now living'', we are compelled to assume that the court made and caused to be made the independent investigation. There is nothing in the record to indicate what investigation was made or what facts were disclosed thereby. The plaintiff takes exception to this procedure and cites authority in apparent support of his position. The question for decision may be briefly stated thus: The trial court, with the express consent of both parties or with their express waiver of objection, personally makes, and directs others to make, an independent investigation, the results of which do not appear in the record on appeal. The investigation relates solely to the issue as to the future custody of the child and its welfare. The trial court considers the report and investigation along with the testimony received at the trial. Under these circumstances, what is the duty of this court when the order for custody is brought here on appeal by one who consented that the investigation be made, or who expressly waived objection thereto?

■ Before considering the decisions, it should be

stated that our inquiry is strictly limited to cases in which the independent investigation relates to the single question of child custody—to the determination by the court of the welfare of a child who is a ward of the court. The issue presents in striking form, one of the many judicial problems arising when competing social interests, both valid when considered alone, appear to be in conflict. On the one hand we find the time-honored rule, supported by constitutional mandate, that no court shall be secret and that justice shall be administered openly. The right to confront and cross-examine witnesses lies at the base of our judicial system. The existence of a back door to the court room, and thus, to the judge's private ear, is abhorrent to our ideas of justice. On the other hand, in recent years we have witnessed great changes in the attitude of society and of public officials in dealing with the thousands of children of broken homes who are wards of the state. Throughout the nation, men and women are being trained in the social sciences, and prepared for work in public employment and in fields authorized by statute, to the end that the state, as parens patriae may better perform the difficult task of determining what is for the best interest of the unfortunate child. Among these groups are the parole and probation officers and trained case workers who are attached as aides to domestic relations courts. Examples may be drawn from the statutes in most of the states. In this state courts are authorized to appoint probation officers whose duties are to make investigation when any child is brought before the court and "to furnish the court such information and assistance as the court or judge may require * * *." OCLA, § 93-606. All assistants employed in courts of domestic relations must be persons whose appointment by the judge has

been approved by the child welfare commission. OCLA, § 93-507. It appears to have become common practice for judges in custody cases to make use of these modern facilities in a highly informal way, quite inconsistent with the procedure in strictly judicial inquiries on other matters. We know also of the practice of many judges who, for sound reasons, are reluctant to require an infant to testify in open court for or against one parent in a divorce case. With the consent of both parties, expressed in open court, judges have invited the child into chambers and in quiet conversations have secured valuable insight into the child's attitude, whether of fear or of affection, toward a parent. It must be conceded that such informal procedure is likely to shed more light upon the issue than would result from subjecting the child to examination and cross-examination (perhaps after coaching) in open court. If such action is illegal, then many trial judges, some of them now on this court, have erred. The problem is not a simple one and is distinguishable from all other judicial procedures. Although, in form, the issue is raised between plaintiff and defendant as adversaries, we have frequently pointed out that the claims of the divorced husband and wife are subordinate to the welfare of the child who is the subject of the controversy and is neither plaintiff or defendant. In view of the fine service being impartially performed by child welfare agencies and of the benefits which are sometimes derived by personal interviews by a judge with a ward of his court, we should be very sure before we brand all such service as illegal. This much, however, is fundamental. Any person who desires to stand upon his strict legal rights, and to preserve his right of appeal to this court, may insist that no fact should be brought to the attention of the trial

court and that no influence should be exerted upon it, except in the manner of the common law, by testimony and argument in open court, with the right accorded to both parties to testify, to produce witnesses, and to confront, cross-examine or contradict adverse witnesses. But that is not the case at bar. Here we have express consent, or at least express waiver, of any objection to the course pursued by the court. We turn to the authorities.

A similar, but not identical question, was considered in *Nelson v. Nelson,* 180 Or 275, 176 P2d 648. In that case the plaintiff sued his wife for divorce and for custody of the minor child. On 6 November, 1944, the day set for the trial, the parties stipulated as follows:

"* * * the court is authorized to have investigation made of the conditions in the present home of plaintiff and defendant for the purpose of ascertaining which party is entitled to the custody and control of James Craig Nelson, minor child of the parties hereto. Based upon the report to be returned to the judge of this court by his investigators, the court shall award the care, custody and control of said minor child as he deems proper and equitable. In the event that the care, custody and control of said minor child is awarded to the defendant, he shall make such award as he may deem equitable for the support of said minor child, and shall be authorized to make such regulations as to visitation as he may deem proper."

Thereupon the trial was postponed. On 17 January 1945, and more than nine months before any evidence was introduced in the case, the trial court made an order reciting the stipulation and continuing in part as follows:

"* * * and such an investigation having been made and a report filed, recommending that the

custody of said child be given to the plaintiff with the actual custody and care with the mother of the plaintiff, and the court being fully advised,

"IT IS ORDERED that the plaintiff be, and he hereby is, awarded the custody and control of said minor child, James Craig Nelson * * *."

The case was tried on 30 October 1945. Testimony was taken in open court and a decree of divorce was entered, confirming the previous order as to custody. Upon appeal, this court held that the stipulation related to the final order on custody to be made on termination of the marriage contract. It found that the decision of the court was based, at least partly, upon the secret report which was made by an officer of the court of domestic relations and therefore the case was remanded to the circuit court on the sole issue of child custody. From the opinion in *Nelson v. Nelson,* supra, it seems likely that this court considered that there had been an actual delegation of authority to the investigator, not only to advise, but also to decide the issue of custody, for the court quoted from *Washburn v. Washburn,* 49 Cal App2d 581, 122 P2d 96, as follows:

"* * * * ' "The power of decision vested in the trial court is to be exercised by a duly constituted judge, and that power may not be delegated to investigators or other subordinate officials or attaches of the court, or anyone else".' "

The court also cited other cases which supported the quotation from the Washburn case. The court may well have been led to infer that there had been an actual delegation of authority from the fact that the original award of custody was made after the receipt of the report, but nine months before any testimony had been taken. We, of course, agree that the trial court cannot delegate to anyone the authority to decide. Relying

upon the cases cited by it, and which we shall shortly analyze, the court also said:

> "In providing for the future care and custody of minor children, the court is vested with large discretion, but such discretion is judicial and must be based upon evidence introduced in the case. His decision in the matter is subject to review in this court."

■■ We agree that both parties are entitled to introduce evidence in the conventional manner, and may do so, even though they have also stipulated for an independent investigation. We agree also that the decision of the trial court, when based solely on evidence introduced in open court, is subject to review and trial de novo in this court. We are constrained to add however, that we have grave doubts as to whether any appellate court, acting on a cold record, is as likely to arrive at a wise decision concerning child custody, as is the trial judge who sees the parents, hears the testimony, and observes the child. It is for this reason that we have repeatedly held that the decision of the trial court is entitled to great weight in such cases. This court is ill-equipped to exercise a wise and humane discretion on a record which, of necessity, fails to disclose the subtle, but highly persuasive, evidences which are manifest to the trial judge. A wise appraisal of the character, fitness, emotional stability, affection, hostility, or motive, of the parties to a contested divorce case, who are competing for the custody of a child, or a like appraisal of the inner attitude of the child itself, requires more than can generally be made to appear on the printed page.

■ If, by the language quoted from the Nelson case, this court intended to indicate that trial courts, in the exercise of their own judicial discretion, cannot consider the results of an independent investigation made

pursuant to stipulation, then the case must, to that extent, be overruled.

■■ We find nothing in the Nelson case which indicates that this court should try a case de novo solely on testimony taken in open court, when, pursuant to stipulation, the trial court has based its decision, in part, upon matters which it was authorized to consider, but which do not appear in the transcript of testimony. The court did not try the issue of custody de novo in the Nelson case, but remanded it for further hearing. Our question is whether it is necessary, in such a case, to remand for further proceedings, or, on the other hand, whether this court might, in such a case, properly hold that when the parties consent that the court may interview a child, or may consider an independent report, they thereby waive the right of appeal on that issue and thereby accord finality to the decision of the trial court. We understand the general rule to be that this court will not try a case de novo unless it has before it all of the evidence on which the trial court based its decision. The theory of trial de novo is that the Supreme Court is reviewing the identical case which the trial court decided. A failure to bring up the evidence on appeal in equity renders it impossible to try the case anew as required by OCLA, § 10-810. *Wyatt v. Wyatt,* 31 Or 531, 49 P 855; *Wood v. School District No. 13, et al,* 107 Or 280, 214 P 589. This general principle appears to be applicable here. Technically, the ''evidence'' received in court appears in the record. Actually the record does not disclose the factual basis of the trial court's decision. For this court to retry the case on the ''evidence'' alone would be to try a different case from that decided by the trial court. This we are not required to do.

We will now consider the opinions on which this court relied in support of its decision in the Nelson case.

■ In *Fewel v. Fewel,* 23 Cal 2d 431, 144 P2d 592, the defendant sought a modification of an order which had accorded custody of minor children to the plaintiff. The trial court refused to hear evidence on the part of the plaintiff and made an order of modification based exclusively on the recommendation of an investigator. The court announced that the report of the investigator would be final. The report contained no statement of facts or reasons. The plaintiff filed affidavits but the court refused to consider them. There was no stipulation by the parties, no waiver of objection to the action of the trial court. On appeal the California Supreme Court properly reversed and remanded the case and said:

> "The purpose of the legislation providing for court assistants in the capacity of 'investigators of domestic relations cases' to 'assist the court in the transaction of the judicial business of said court' (Code Civ. Proc. § 261a) is obviously what the language used implies; i.e., to assist the court and not to replace it. The Legislature would have no power to substitute an investigator for a judge. Neither does such legislation authorize a trial court to deny to the parties any of the usual attributes of a fair trial in open court upon due notice."

In the case of *Washburn v. Washburn,* 49 Cal App2d 581, 122 P2d 96, the court said:

> "The power of decision vested in the trial court is to be exercised by a duly constituted judge, and that power may not be delegated to investigators or other subordinate officials or attaches of the court, or anyone else."

This language was approved in *Fewel v. Fewel,* supra, and in *Nelson v. Nelson,* supra. We agree with the principles stated. But the court in the Washburn case also said "the law requires a full hearing and a decision on the evidence produced under oath or upon the stipulation of the parties." We also agree with the further comment of the California Supreme Court in *Fewel v. Fewel* when it said:

"The investigators of domestic relations cases occupy a position of importance in the court as adjuncts of the state judicial system (cf. Noel v. Lewis, 1917, 35 Cal. App. 658, 662, 170 P. 857.) It is their province, under the direction of the judge, to 'assist the court in the transaction' of that particular part of its judicial business which deals most intimately with the welfare of children of broken homes. They are in a position to produce for the judge evidence which might not otherwise be available at all and certainly not otherwise so expeditiously. As unbiased and trained observers they may gain at first hand information which is of vast importance to the court and to the children whose interests are involved, as well also, to the parents whose claims are just, all to the end of giving actual vitality to the proposition that the children's welfare shall be paramount in determining custody problems. They may see the homes in which the children live, they may call without previous notice of the exact time, they may observe whether children appear to be supervised or neglected, nourished or famished, happy or abused. They are far more than 'messengers' of the judge without 'province to recommend a decision.' The statements to the contrary in Washburn v. Washburn, 1942, 49 Cal. App2d 581, 589, 590, 122 P2d 96, are too broad and are disapproved. * * *"

In *Fewel v. Fewel* the plaintiff made a further contention that the order of the trial court was void for want of jurisdiction by reason of the circumstances

related. This contention was rejected. The court said:

"* * * Such contention cannot be sustained. Admittedly the court here had jurisdiction over the subject matter of the proceeding and over the parties and their children. Therefore, even though it received and considered no competent evidence, its order, though erroneous, was not beyond its jurisdiction or void. * * *" Citing many cases.

In *McGuire v. Superior Court in and for Los Angeles County,* 137 Cal App 272, 30 P2d 61, an original application for habeas corpus was brought in the District Court of Appeal. The petitioner was the father of an infant child and the respondent was the mother. A suit for divorce was pending between them. When the issue of custody arose in the Superior Court, the plaintiff and defendant stipulated that the matter of the custody of the minor child of the parties be referred to the court investigator. It was further stipulated "that the report of said court investigator may be considered by the court as evidence at said hearing, together with any additional evidence said parties may desire to present." It is alleged in the petition for the writ of habeas corpus that the Superior Court had received the report of the investigator but refused to permit any evidence and that the court had based its order solely upon the investigator's report. The respondent contended that a legal hearing had been conducted in the Superior Court because of the stipulation that the investigator's report might be received as evidence. It was therefore contended that, although error was committed by the trial court in refusing to receive other evidence, such error did not amount to an act in excess of jurisdiction. The Court of Appeals pointed out that the stipulation con-

templated that other evidence in addition to the report might be presented. It therefore held that the order was void because without jurisdiction. Concerning this decision the Supreme Court in *Fewel v. Fewel* said:

"* * * The holding in the McGuire case (McGuire v. Superior Court (1934), supra, 137 Cal. App. 272, at page 275, 30 P.2d 61, at page 62), that the order therein described 'was made without jurisdiction and is void,' because assertedly not supported by competent evidence, is overruled. Neither, under the circumstances there related, was there a total lack of competent evidence nor would the order have been void if there had been such lack. The record depicted in the opinion in that case shows error but not want of jurisdiction."

The next case cited in *Nelson v. Nelson* is *Martinez v. Martinez*, 49 NM 405, 165 P2d 125. The only issue before the New Mexico Supreme Court related to the custody of an infant in divorce proceedings. The trial court heard the testimony and then ordered an investigation by the court welfare worker. Based, at least in part, on the ensuing report, the court made an award of custody. There was no stipulation and no waiver of objection by either party. The Supreme Court said:

"* * * We are impressed that a report such as the court acted upon in this case, made by an unbiased investigator, would assist materially in determining to whom should be given the custody of a child in such cases."

The ruling was as follows:

"That the appellant has no standing in this court because of his failure to object to the unusual proceedings for the determination of the issues in the case, or to in any manner call the court's attention to the error he now complains of,

is settled by many decisions of this court. See Stacey v. Whalen, 33 N. M. 577, 273 P. 761.''

In *Wacker v. Wacker,* 279 Ky 19, 129 SW2d 1043, the trial court heard testimony and then without any stipulation or waiver by the parties, ordered an independent investigation concerning custody and also called the children before him and talked with them privately. The plaintiff in the divorce case appealed from the ensuing award of custody. The court said:

"In cases of this kind there will be no interference with the chancellor's award of custody unless it is made to appear quite satisfactorily that there was an abuse of judicial discretion. In this particular instance the chancellor's interest in the welfare of unfortunate children is well known to every member of this court, and there is, therefore, a special confidence in his judgment. The circumstances seem to have justified his independent inquiry, and we cannot but feel that his disposition of these little girls was proper. But we are confronted on a review of the record by the necessary and controlling principle that the propriety of a judgment is dependent upon the evidence heard and not upon what the court may have learned or known outside the record. Coleman v. Coleman, 256 Ky. 530, 76 S. W.2d 593. Our Civil Code of Practice prescribes the manner and mode of taking testimony. Section 543, 552, and 708. We are confined in our consideration to testimony taken in accordance therewith."

Since there was no stipulation or waiver of right in the case, the Supreme Court very properly remanded the case with leave to reopen upon motion of either party or by the court sua sponte.

In *Watkins v. Watkins,* 221 Ind 293, 47 NE2d 606, the parties to a divorce case joined in requesting the court to cause its probation department to make an investigation as to the conditions surrounding their

respective homes and that the "report be received by the court and considered as evidence on the issue of the custody of said child  \*  \*  \*." At the conclusion of the evidence the court stated that he would have the probation officer make a check-up as to the custody of the child. Subsequently an award of custody was made. Before final judgment, the appellant moved to see the report of the probation department, which motion was denied. On appeal the ruling was assigned as error. Notwithstanding the obvious implications arising from the stipulation and the statement of the trial court, the Supreme Court said that it did not know whether any investigation was conducted or any report made. The court stated that the burden of showing reversible error was upon the appellant and since error was not shown, the decree was affirmed. The court did, however, express disapproval of extra-judicial inquiry and expressed agreement with the decision in *Cohn v. Scott*, 231 Ill 556, 83 NE 191, which case we will later discuss.

In *Des Chatelets v. Des Chatelets*, 292 Ill App 357, 11 NE2d 13, a divorced parent sought an order modifying the custody of the children of the parties. Testimony was received by both sides. The trial court received a confidential report from the social service department which did not appear in the record, although the court considered it and based its findings thereon. There was no stipulation and no waiver by the parties. On appeal to the Appellate Court of Illinois it was held that the court committed error and the order was reversed.

In *Bestel v. Bestel*, 153 Or 100, 44 P2d 1078, 53 P2d 525, the plaintiff was awarded a divorce from her husband and custody of the child of the parties. Thereafter the defendant moved for change of custody, sup-

ported by an affidavit which failed, however, to show any change of conditions. It therefore formed no basis for any change of custody. Affidavits in opposition to the motion were filed on behalf of the plaintiff. At the hearing the plaintiff was not permitted to offer any evidence. The chief probation officer testified in open court. An order was made on defendant's motion changing the custody of the child and the plaintiff appealed. This court held that such testimony was hearsay and inadmissible, though it does not appear from the opinion that any objection was made to the testimony of the probation officer. Notwithstanding the fact that affidavits were considered and the testimony of the probation officer given, and notwithstanding recitals by the trial court to the effect that it had considered the affidavits and that it had received the benefits of the report of the probation officer, this court said:

"* * * it appears that the court acted on information secretly conveyed to him by Mrs. Neth, whom he had ordered to make an investigation, none of which said information was or ever has been made a matter of record in said cause."

■ It was correctly held that custody can be changed only after notice and an opportunity to be heard has been accorded to the parties. In that case there was no stipulation by the parties and no waiver of the right to object to the investigation and report of the probation officer. It was held that the course of procedure followed by the court is "unknown to our law."

The court continued:

"While acting as a circuit judge and in respect to any matters coming before him as such, Judge Gilbert can have no chief of staff or other probation officer to make any investigation for him or render to him any advice in respect to any matter

that is pending before him for judicial decision. Such advice, if tendered, would constitute a contempt of court and would be punishable as such.''

The last-quoted passage goes far beyond the necessity or the law of the case and is disapproved for the reasons indicated above. The case is distinguishable from the one at bar.

The last case cited by this court in *Nelson v. Nelson,* supra, is *Cohn v. Scott,* 231 Ill 556, 83 NE 191. In that case the plaintiff wife secured a divorce but custody of the child was awarded to the defendant husband. The plaintiff filed in the circuit court a petition for change of custody. Issue was joined and the cause was heard on evidence in open court and custody of the child was given to the plaintiff. At the trial the court indicated an intention to make an investigation. Both parties expressed approval. There was no indication of any intent to have an independent investigation by anyone other than the trial judge. A month later the court stated that it had made no personal investigation. Without any stipulation authorizing it, the court caused the police department to make an investigation concerning the character of the plaintiff's then husband who was a gambler. The record indicates that the method of investigation followed was a far cry from that which is employed by judges of domestic relations courts, who are equipped with a corps of trained social workers. The judge said:

''* * * I was alderman for two terms before that, and if anybody can show me anything about the police department I would like to find it out. * * *

''* * * from what I hear of Cohn, I am very well satisfied that that child will not be injured in any way.'' Scott v. Cohn, 134 Ill App 195, 201.

The Appellate Court reviewed the evidence taken at the circuit court and held that there was nothing to show that the plaintiff was a fit person and that "the evidence tends to prove the contrary." It disapproved the procedure followed and reversed the decree of the circuit court upon the ground that the decree was manifestly against the clear weight of the evidence. The case was appealed to the Illinois Supreme Court (231 Ill 556, 83 NE 191). The court again reviewed the evidence which clearly showed that the plaintiff was not a fit person to have custody of the child and that her then husband was operating a gambling house. The court took notice of the agreement that the chancellor himself should investigate, but stated that he had made no personal investigation. The court then distinguished *Cowles v. Cowles,* 3 Gilm. 435, and said:

"* * * While a very large discretion must be permitted the chancellor hearing these cases, yet it must be a judicial discretion and subject to review on the evidence heard in open court. The agreement of counsel cannot bind as to the interests of the minor, which is the paramount question in this proceeding. If the chancellor could decide partly on investigation made out of court, then the whole decision might rest upon such an investigation and could not be reviewed. Such is not the law."

It is clear that there was no stipulation authorizing the trial judge to employ the police department in making an investigation, and that the conduct of the trial judge was far from a model of judicial propriety. We have no criticism of the actual decision. We agree that the chancellor cannot delegate the power of final decision. We agree also that counsel cannot by stipulation *bind* the interests of the minor, and we agree further that if by a stipulation authorizing it, the court receives assistance from members of its staff, the

results of which are not placed in the record, the Supreme Court may properly refuse to try the case de novo.

Both parties have neglected to cite the case of *Zachary v. Zachary,* 155 Or 346, 63 P2d 1080, which also was not considered in our later decision of *Nelson v. Nelson,* supra. The issue related to the change of custody of the child of divorced parents. Affidavits were filed on both sides. At the hearing, the parties, through their respective attorneys, entered into the following stipulation:

> "It is hereby agreed by Bradley Ewers, attorney for the plaintiff, and F. H. Greenman, attorney for defendant, that this court be and it is hereby requested to have an investigation made by some probation officer on its staff, said investigation together with any testimony received at the trial and any other legal evidence to be taken into consideration by the court on passing on the aforesaid motion, this investigation to be conducted generally in accordance with the provision of Rule 11 of the Department of Domestic Relations."

The court appointed a probation officer to make the investigation. Thereafter an order was entered reciting that the court had read the affidavits on file and had duly tried the issues between the parties. Custody was granted to the defendant. Upon appeal, this court said:

> "In the absence of a record to the contrary, we must presume that the decree recites the facts and that the parties did have a hearing. The parties stipulated that the court might make an independent investigation and take such investigation into consideration in passing upon the motion. This, the court evidently did. The several affidavits in support of the countermotion, if the court believed them,

abundantly support the court's action in the matter independent of the investigation.''

The order of the trial court was affirmed.

The necessary implications from the decision in the Zachary case are, first, the action of the trial court, in relying upon an independent investigation, did not prevent its decision from being that of a court having jurisdiction. Second, at most, the court could have considered the making of such investigation to be error, but invited error. Third, this court did not consider it necessary to remand the case to the trial court.

In *Jenkins v. Jenkins,* 304 Mass 248, 23 NE2d 405, the defendant appealed from an order changing the custody of the minor child of the divorced parties. In discussing the procedure, the Supreme Court quoted the following with approval from *Dumain v. Gwynne,* 10 Allen 270, which was a habeas corpus proceeding brought to recover custody of children:

> '' 'He [the judge] is not restricted to the ordinary modes of trial, but may direct that the children be brought before him, and may examine them privately, and may also avail himself of affidavits or other reasonable and proper sources of evidence.' ''

At the trial below an investigator's report had been received in evidence, and at the trial, counsel for the appellant said, '' 'It is not necessary for me to call Your Honor's attention that this violates every rule of evidence.' '' The Supreme Court said:

> '' * * * This can hardly be said to amount to the saving of an exception, but, if we assume otherwise, there was no error. G.L. (Ter.Ed.) c.215, § 56A, provides, among other things, that any judge of a probate court may appoint a guardian ad litem to investigate the facts in any proceeding pending in said court relating to or involving questions as

to the care and custody of minor children, and as to any matter involving domestic relations except those for the investigation of which provision is made by section 16 of c. 208, which provides for the appointment of an attorney to investigate and report to the court in relation to any pending libel for divorce. The guardian ad litem before final decree in such proceedings is required to report in writing to the court the results of the investigation and such report shall be open to inspection to all the parties or their attorneys. At the hearing the father was afforded the opportunity of attacking the report, and called many of the witnesses whom the guardian ad litem had interviewed.

"The judge was entitled to make use of the report."

In *Jones v. Jones,* 23 Wash2d 657, 161 P2d 890, the Washington Supreme Court gave careful consideration to the issue with which we are now concerned. The plaintiff in a divorce suit sought modification of the decree concerning custody. The court appointed investigator who made a report. Custody was awarded to the wife. It was contended on appeal that the court erred in refusing to place in the records the report of the investigator. The facts appear in the opinion on appeal. We quote:

"There can be no question but that the court understood all parties had agreed that the court might select some lady to investigate these homes and make a report to him; that if the investigator objected, regardless of a strictly legal right to so object, the report was to be made available only to the court; and that the investigator was not to be interrogated in regard to the report. We think the court was justified in its understanding of the agreement. * * *

" * * * * * *

"It may be said also that the trial court finally

stated that it would not consider the report, but whether the court could or did disabuse its mind of the substance of the report, we are of the opinion that under the facts the court committed no error in refusing to permit Mrs. Swanson's report to be introduced, or in refusing to permit her to be further interrogated.''

The judgment of the trial court was affirmed.

In *Prouty v. Prouty,* 16 Cal2d 190, 105 P2d 295, an investigator's report was received upon the issue of child custody. The court said: ''Such a report, however, is advisory only and the trial judge always has the right to disregard it.'' The trial court also interviewed the child. The results thereof were not placed in the record, yet the decision of the trial court was affirmed.

Judicial awareness of the necessity for informal procedure in custody cases was shown by the Supreme Court of Idaho in *Krieger v. Krieger,* 59 Idaho 301, 81 P2d 1081. In that case an eight-year-old child had been examined as a witness in open court concerning her preference between father and mother. The Supreme Court said:

''  *  *  * It should be observed just here that this kind of examination of an 8-year-old child, in the presence of its parents, is hardly fair to the child. If such an examination is thought proper at all, it should take place out of the presence and hearing of the parents so as to save the child the embarrassment and possible fear of expressing a preference between the father and mother. Andrino v. Yates, 12 Idaho 618, 623, 624, 87 P. 787.''

In *Stacey v. Whalen,* 33 NM 577, 273 P 761, the trial judge examined a witness out of the court room and away from the parties, and without according the right of cross-examination. The court said:

" * * * In the case at bar, there was no objection to the conduct of the trial judge now complained of; no exception taken thereto; no motion to set aside the judgment for irregularity was made, nor any other proceedings taken to call attention of the trial court to his alleged misconduct, in order to obtain a ruling or decision thereon. In this state of the record, the judgment will not be reversed on account of the irregularity assigned here for the first time."

In *Conley v. St. Jacques,* Tex Civ App (1937), 110 SW2d 1238, the court expressed its views concerning custody procedures as follows:

" * * * It has many times been held that technical rules of practice and pleading are of little importance in determining issues concerning the custody of children. It is not only the right but the duty of the trial court to ascertain any and all facts, and make such investigations as, in his judgment, will assist him in reaching a proper conclusion as to the problems surrounding their custody to the end that he may determine the person who is best qualified and most suitable to furnish the proper environments and home in which they are to live. * * * "

In *Williams v. Guynes,* Tex Civ App (1936), 97 SW2d 988, the mother brought habeas corpus to secure custody of the child of the parties who had been divorced. The question related to the best interest of the child. The court refused to allow the child of above 12 years of age to testify. After all of the evidence had been heard, the court announced that it would talk to the child. She was taken out of the hearing of the parties and the court ascertained in private conversation her ideas as to where she would rather live. No objection was made by the appellant who also acquiesced in an order directing an independent investi-

gation by the juvenile officer. The trial court awarded custody to the mother and the Court of Appeals affirmed. We quote:

"The habeas corpus proceedings had for their purpose the determination of the proper person to whom the custody of the minor child should be given. The proceedings are necessarily informal. It is the right and duty of the trial court to ascertain any and all the facts and to make such investigation of conditions which in his judgment will assist him in reaching a proper solution of the child's problems. Technical rules of practice are not to have controlling effect. The controlling issue on the merits is which custodian is for the child's best interest. The pleading in such cases is considered of little importance, and the judge exercising the jurisdiction of a chancellor has broad equitable powers. * * * ."

In *Smith v. Smith,* 209 Wis 605, 245 NW 644, and *Wunsch v. Wunsch,* 248 Wis 29, 20 NW2d 545, custody cases were reversed because the trial court had received the results of independent investigation which was not made a part of the record, and which was not authorized by stipulation of the parties or acquiesced in by them.

■ From the foregoing review of recent decisions, we reach the following conclusions: The trial court cannot delegate to anyone the power to decide questions of child custody. All parties to the controversy have a right to present competent evidence in open court. When the court, in the absence of any stipulation, and in the face of timely objection, makes an independent investigation concerning child custody, it commits error. Its action, however, is not void for want of jurisdiction. The better-reasoned modern cases tend to support the view that when an independent investigation is made by the court, or a private conversation

is had with an infant whose custody is in issue, or when investigation is authorized and made by a member of the staff of the court, such action, being pursuant to stipulation of the parties or being acquiesced in by the parties, the consideration by the court of such investigation will not constitute reversible error even though the report is not incorporated in the record.

If it be thought that the rule as above stated constitutes a departure from traditional procedure, a consideration of analogous rules already separately recognized as law, should, we think, dispel any such impression. The following rules are relevant to the question under consideration: (1) The right of appeal, and a fortiori, the right to a trial de novo, is not a constitutional right but a statutory privilege. *Brown v. Irwin, Executrix,* 187 Or 462, 212 P2d 729. The privilege may be waived and waiver may be implied from conduct. (2) Waiver of the right to appeal or estoppel may result from acquiescence in the orders or proceedings of the lower court or in submission thereto without objection. *Matson v. Rhodes,* 174 Or 550, 149 P2d 974; 4 CJS, Appeal and Error, §§ 209–211. (3) Assuming that one has a right of appeal, the general rule is that questions not raised in the lower court are not reviewable here. It is Hornbook law that failure to object to the admission in evidence of hearsay or opinion evidence may constitute waiver of the right to complain in this court.

"* * * In fact, the general rule to which only a small minority of jurisdictions take exception is that hearsay testimony admitted without objection may properly be considered and given its natural probative effect." 20 Am Jur, Evidence, § 452.

Again, if the question be considered from the standpoint of the much criticised opinion rule (7 Wigmore

on Evidence, 3d ed, § 1919 et seq.,) then the recognized limitations of that rule should also be noted. The following excerpt is peculiarly applicable to the delicate questions concerning child custody.

> "When the subject matter of an inquiry relates to numerous and subtle facts perceived by the senses, to a series of instances passing under the observation of witnesses, or to a great variety of circumstances and a combination of appearances, which are too indefinite and general in their nature to be susceptible of direct proof or which, by reason of the limitations of language, cannot be adequately described and presented to the jury with the same force and clearness as they appeared to the witness, the witness may state his impressions drawn from, and opinions based upon, the facts and circumstances observed by him or the effect which they produced upon his mind. This is the only practical and intelligible manner possible of conveying to the jury what the witness has seen or heard. * * * " 20 Am Jur, Evidence, § 769.

(4) The decision of the trial court in custody matters, when tested by appeal, comes here weighted with the presumption that the court has properly exercised its judicial discretion in determining what is for the best interest of the child.

█ If parties acquiesce in an independent investigation they do so charged with knowledge that upon appeal this court will not, because it cannot, try the issue of custody de novo, since the record here will be incomplete. Conscious of the fact that the trial judge, aided by his staff, is in a better position to determine custody than is this court, we see no objection to a procedure whereby parties, in effect, agree that the decision of the trial judge who has had the benefit of testimony in open court, plus independent investigation, shall be final. We hold that consent to

such procedure or informed acquiescence therein by the parties, may properly be construed to constitute a waiver of objection to such independent investigation, and consequently, to be a waiver of the right to trial de novo on the specific issue of custody.

In the case at bar, the court accorded a full hearing to the parties in open court. Witnesses pro and con testified before the independent investigation was proposed or made. There is nothing to indicate that the actual decision was delegated to the investigator. As said in *Prouty v. Prouty,* supra, the report of an investigator is advisory only. We will not try the issue of custody de novo, and in the present circumstances, see no reason for remanding the case to the circuit court.

■ In addition to his prayer for custody of the infant, the plaintiff, Lex C. Rea, has moved for an order relieving him from the payment of monthly instalments for the support of the minor child of the parties under the provisions of the original decree. We have examined the testimony upon that issue and find no reason for any change in that provision of the decree. Plaintiff is earning something over $400 a month "take-home pay". The required monthly payment of $40 is not unreasonable.

The decree of the circuit court is affirmed.

LATOURETTE, J., specially concurring.

I am in accord with the result reached in the prevailing opinion, but not with the reasoning by which the result is reached. By the opinion, this court refuses to try the issue of the custody of the minor child de novo. This refusal is based, as I read the opinion, on the proposition that the attorneys in the trial court agreed to the court's suggestion that it make "an

independent investigation and have a report from a disinterested party with respect to the child.'', and, since the trial court made an independent investigation and had a report from one of its attaches, and, since neither such report nor the evidence upon which it is based is in the record, we do not have all of the evidence that was considered by the court before us, and, therefore, we cannot hear the matter anew.

The above view is contrary to that reached by this court in at least three cases. The first is *Bestel v. Bestel*, 153 Or 100, 44 P2d 1078, 53 P2d 525. There, the trial judge, through his court officials, made an independent investigation in a child custody case arising out of a divorce proceeding. We said, in reversing:

'' * * * What information was conveyed to Judge Gilbert by the members of his staff is not disclosed by the record, but the orders made by him and later entered in the case show that he not only received but that he acted upon the information secretly conveyed to him by the members of his staff. Such a course of procedure is unknown to our law. It is contrary to the very essence of the administration of law in any judicial proceeding. Judge Gilbert had no more right or authority to consult with or be advised by any member of his so-called staff in his decision of this case than would the judge of any court have the right and authority to go outside the record and be governed by communications privately conveyed to him in respect to matters pending before him for decision. Section 10 of article I of the constitution of this state provides:

'' 'No court shall be secret, but justice shall be administered openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation.' ''

In *Zachary v. Zachary,* 155 Or 346, 350, 63 P2d 1080, the trial court made an independent investigation. We said:

"* * * The parties stipulated that the court might make an independent investigation and take such investigation into consideration in passing upon the motion. This, the court evidently did. The several affidavits in support of the countermotion, if the court believed them, abundantly support the court's action in the matter independent of the investigation."

We tried the case de novo and affirmed, giving due consideration to the legal record evidence.

*Nelson v. Nelson,* 180 Or 275, 282, 284, 176 P2d 648, involved child custody. In that case, speaking through Mr. Justice BAILEY, we said:

"In providing for the future care and custody of minor children, the court is vested with large discretion, but such discretion is judicial and must be based upon evidence introduced in the case. His decision in the matter is subject to review in this court * * *.

"* * * * * *

"To what extent the court's decision as to the future custody of the child is based upon the secret report of its investigators is not disclosed by the record. That it is based, at least partly, on that report is made clear by the recitals in the decree. Therefore the decree as to his future custody is erroneous, and it should be reversed and the cause remanded to the circuit court for a determination of his future custody according to recognized legal principles."

The prevailing opinion does not expressly overrule the three above mentioned cases but has this to say of the Nelson case:

"If, by the language quoted from the Nelson

case, this court intended to indicate that trial courts, in the exercise of their own judicial discretion, cannot consider the results of an independent investigation made pursuant to stipulation, then the case must, to that extent, be overruled.''

It would appear that, since Chief Justice BRAND joined in the opinion in the Nelson case, he should know what this court intended to indicate in such case. It is obvious to me, from a reading of the opinion in that case, that it clearly holds that this court does not condone an independent investigation. We remanded the case for retrial on legal evidence. The majority endeavors to differentiate the three cases above mentioned from the present case. Of course, the facts are different but the principle is the same. Thus, it appears that the law of this state for the last 15 years has been well settled that a child custody case cannot be decided on evidence dehors the record. It is, of course, presumed that attorneys who enter into stipulations such as we have in this case are fully aware of such holding. It is apparent, therefore, that when parties, through their attorneys, enter into such a stipulation, it is merely to be considered as being helpful to the court in arriving at a proper apprisal of the legally introduced evidence. It would be tantamount to a jury's view of the premises.

If parties to a divorce proceeding want to stipulate away their own rights, that is one matter, but to enter into a binding agreement affecting the future welfare of the child is another. We have often said that the child is a ward of the court, and that the public is vitally interested in its welfare, and, for this reason, we should surround him with every protection and safeguard known to the law.

There is no question but that in some instances the

trial court may gain an added picture of the situation from an extrajudicial investigation, but there may be instances in which the opinions of the investigators are based on hearsay, prejudice and many other things. The legislature had laid down rules regarding the conduct of trials, and we should abide by them. If a change is to be made, it should be made by the legislature and not by the court. We should not engraft into the law novel ideas that strike at the very foundation of our judicial system. To deny the right of appeal in the instant case is an emasculation of the judicial process.

There is no need in this case to deny the right of appeal when we have a full record of what transpired at the trial. That record is sufficient to enable us to properly decide this case. I am of the opinion that the evidence before us warranted the decree of the trial court in awarding the custody of the child to the mother. For this reason, I concur in the result. This is in keeping with the rule laid down in the Zachary case.