142 So.2d 740 (1962)
Floyd MITCHELL, Appellant,
v.
STATE of Florida, Appellee.
No. 2864.
District Court of Appeal of Florida. Second District.
June 6, 1962.
Rehearing Denied July 5, 1962.
Raquel Little, Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellant.
Richard W. Ervin, Atty. Gen., Tallahassee, and Robert R. Crittenden, Asst. Atty. Gen., Lakeland, for appellee.
ALLEN, Acting Chief Judge.
This is an appeal by a father from an order of the Juvenile Court permanently committing his children to a child placing agency for adoption.
Appellant with his wife and three children arrived in Tampa, Florida, on August 14, 1961. Being virtually penniless, on August 15th appellant went to Travelers Aid for help in returning with his family to his original home in Georgia. Travelers Aid referred appellant to the Welfare Department for Hillsborough County where he was persuaded to accompany a welfare worker to the Juvenile Court.
On the same day, the counselor for the Juvenile Court filed her petition wherein she alleged that the three Mitchell children, aged four years, three years and two months, were dependent children within the meaning of Chap. 39, F.S.A. Said petition related:
"* * * The children are living in an environment detrimental to their welfare in that the family is destitute because the father has neglected to provide a proper home and support for the children. Further, the parents have refused medical care for the children; and parents appear to be mentally incapable of caring for the children."
The petition then requested the Juvenile Court to take jurisdiction of the children and determine whether they were dependent.
On the same date, August 15, 1961, the intake counselor for the Juvenile Court petitioned the court alleging that the Mitchell children were dependent children within the meaning of Chap. 39, F.S.A. and further alleged:

*741 "* * * The father quit his job in Nashville, Tennessee and brought the family to Tampa, Florida, on August 14, 1961. He had no job and only $.75 in cash when he arrived in Tampa. The family is destitute and because of the neglect of the father to provide a proper home and support for the children, they are living in an environment detrimental to their welfare. Because of the neglect of the father, they are on the public for support."
On August 16th, the juvenile court judge entered an order reciting that although the children had not been adjudicated delinquent or dependent, their release prior to a full hearing would be detrimental to their welfare for the same reasons quoted above in the intake worker's petition. The court then ordered that the Mitchell children be detained in a receiving home pending a full investigation and hearing.
On August 18th, one * * * filed his affidavits alleging that appellant and his wife "did contribute to the dependency of his (her) three children in that he (she) did bring them into Hillsborough County with no means of supporting them." Thereafter, on the same day, the juvenile court judge issued an arrest warrant for appellant and his wife. Both appellant and his wife were placed in the county jail.
Another order dated August 18th appears in the record directing that appellant's wife be released and the criminal charges against her dismissed. Said order of release was made on condition that appellant take his wife immediately to the Sheriff's office, Forsyth County, Georgia, and that if he failed to so deliver his wife, appellant would be held in contempt of court and committed to the county jail for a period of one year.
Apparently, however, both appellant and his wife remained in the county jail. On August 23rd the court issued a notice to appear directed to appellant and his wife at the county jail. Said notice commanded appellant and his wife to appear before the juvenile court on September 11th to show cause why their children should not be permanently committed to a duly licensed child placing agency in this state.
On September 11, 1961, a hearing was held at which appellant and his wife were present. They were not represented by counsel. Testimony was taken but not reported stenographically and thus forms no part of the record-on-appeal. The recited findings of the court are as follows:
"The parents brought these three children to Tampa from Tennessee with no means of providing a home for them here. The day after they arrived in Tampa, they applied to Traveler's Aid for assistance in returning to their home in Georgia. At that time, the father had 75¢ in his pocket. The parents are wanderers. They have drug these small children over a good part of the country, living from town to town and receiving such assistance from welfare agencies in each town as they could secure.
"Both parents admitted that in Tifton, Georgia, within the past two years, the father sold a baby for $100.00 but then backed out of the deal when he was not satisfied and got the child back, through the assistance of the Sheriff of that county.
"The parents were examined by a psychologist while they were in jail here and it was ascertained that the mother is feeble minded and probably psychotic. She does not have the ability to care for the children. The father has a very low intelligence quotient.
"The parents were properly served with an order to show cause why the children should not be permanently committed for adoption placement on August 23rd, 1961. The parents were also, at that time, arrested on a warrant *742 for contributing to the dependency of the children.
"The Court therefore finds * * * [the three Mitchell children] to be dependent children."
Whereupon the court entered the following order:
"It is therefore Ordered and Adjudged that the case be continued until Wednesday, October 11th, 1961, at 9:30 A.M. The father, Floyd Mitchell, is released and the criminal charges against him are dismissed, at this time. The mother will be released to a member of her family when arrangements can be made for her return to Georgia and her hospitalization there. At the time to which this hearing is continued, the Court will consider any plan that can be presented by either parent or member of either parent's family, for the care of these children, which will not involve the children being released to the parents without a further order of this Court. If a suitable plan cannot be presented at that time, the Court will then consider the permanent commitment of the children to a licensed child placing agency for adoption placement. In the interval, the counselor will arrange to have these children examined, to determine whether or not they are acceptable for adoption.
"Done and Ordered this 11th day of September, 1961."
Subsequently, on October 11, 1961, the juvenile court judge entered the order appealed, quoted as follows:
"This cause having been continued from September 11, 1961, and the parents, Floyd Mitchell and Louise Mitchell, being before the Court, the Court having heretofore adjudicated the children to be dependent after proper service on the parents of an Order to Show Cause why the children should not be permanently committed for adoption placement and having continued the cause until this date to consider any plans that might be offered by the parents and the parents now having presented no plan which the court could accept it is
"ORDERED and ADJUDGED that * * * [the Mitchell children] be and they are hereby permanently committed to a licensed child placing agency for adoption placement. The specific agency to which the children will be committed will be determined by the Court at such time as an agency can be found that will accept the children."
The record-on-appeal consists in the main of the various petitions and orders summarized and quoted above. In addition, included in the record is the report of the psychologist who examined the parents while they were in the county jail.
In her directions to the clerk for making up the record-on-appeal, counsel for appellant also requested that the following items be included:
"13. Social Summary, In Re: Floyd and Louise Mitchell.
"14. Social History, August 17, 1961.
"17. Report from Tifton County [Georgia] Welfare Department, Mrs. Mary G. Veal, Director, August 17, 1961.
"18. Letter from Mrs. Mitchell to Josephine Howard Stafford, dated September, 1961.
"19. Letter from Estelle Turner to Louise Mitchell dated September 4, 1961.
"20. Letter from Ivy Mitchell to Mr. and Mrs. Mitchell, August 29, 1961.
"21. Letter from Estelle Turner to Louise Mitchell, dated September 13, 1961."
*743 In reference to the items set forth above the juvenile court judge entered an order directing the clerk to omit them from the record-on-appeal on the ground that they were not part of the official record as defined by § 39.12(2) F.S.A. Said order also stated:
"In view of Chapter 39.14(3) the court is of the opinion that to include these documents would be improper and therefore declines to do so unless so directed by the District Court of Appeal."
Section 39.12(2) apparently provides for a dual set of records to be kept by the juvenile court in delinquency and dependency cases. The pertinent portion of subsection (2) reads:
"* * * The juvenile court shall make official records, consisting of all petitions and orders filed in a case and any other pleadings, certificates, proofs of publication, summons, warrants, and other writs which may be filed therein, and shall make social records, consisting of records of investigation and treatment and other confidential information not forming part of the official records * * *." (Emphasis supplied.)
The record for appeal purposes is prescribed by § 39.14(3) as follows:
"(3) Within ten days after the filing of the notice of appeal in the juvenile court, the judge or counselor shall transmit the notice of appeal, together with all original papers filed in the official record of the case, and any narrative statement of the evidence which the juvenile court judge may desire to prepare and file therein, the stenographic report of the testimony if any was made, and the appeal fee deposited by the appellant, to the clerk of the circuit court [now District Court of Appeal.]" (Emphasis supplied.)
It thus becomes immediately apparent that the juvenile court judge deemed the items he directed the clerk to omit from the record-on-appeal to be part of the social record described in § 39.12(2) and impliedly required to be excluded from the record-on-appeal by § 39.14(3). His position is further bulwarked by § 39.14(4) and (7), which provide respectively as follows:
"(4) On appeal no new evidence may be presented, but the appeal shall be heard upon the law and the facts as shown by the official records of the juvenile court." (Emphasis supplied.)
"(7) On appeal, the circuit court [now District Court of Appeal  see State v. J.K., Fla.App. 1958, 104 So.2d 113] shall decide only whether a lawful order has been entered by the juvenile court, and shall not substitute its judgment for that of the juvenile court in discretionary matters."
It is apparent, as we have heretofore stated, that the trial judge considered evidence which the appellant requested the clerk of the lower court to transmit to this court, but which the judge ordered the clerk not to transmit, as it was confidential, etc., unless requested by this court. We so requested and the complete record was sent to this court for our study.
We were greatly concerned during oral argument and while studying the brief of appellant's attorney, which so ably and forceably presented appellant's argument, about the rights of these parents in being deprived of the custody and control of their children. Unfortunately, the parents had no attorney during the early stages of this case, the attorney for the appellant appearing only in the latter stages, so there appears in the file only a minimum amount of evidence upon which the decision of the juvenile judge was predicated.
We note from the judge's order that the parents of these children appeared and *744 testified before the lower court but the testimony is not before us as apparently it was not recorded at the hearing.
We note in passing that all the evidence which is adduced before a trial judge should, on appeal and upon request of attorneys for the appellant, be included in the record sent up for review.
In a recent case of this court, McGuire v. McGuire, Fla.App. 1962, 140 So.2d 354, written by Associate Judge Frank A. Smith, who, speaking for this court, said:
"The legislature of 1959 provided for social investigation in any case before the circuit court where the custody of a minor child is in issue (Sec. 65.21, F.S.A.). The Court may request the investigation and social study from the State Welfare Department which is required to furnish a written statement of the facts and its recommendations based thereon. `The Court may consider the information contained in such a report in making a decision on the child's custody, and the technical rules of evidence shall not exclude such report from consideration by the Court.' While the statute does not mention filing the report, such a requirement would seem to be implicit to permit its consideration by the Court. It seems to the Court that when a written report is considered by the Court in connection with any ruling or judgment, it should be filed in evidence the same as any other writing the Court may consider. It is error for the Court to consider any writing or anything else that is not in evidence. This report would not be admissible but for the statute, but the statute has rendered it admissible."
For further discussion on this question see Wunsch v. Wunsch, 248 Wis. 29, 20 N.W.2d 545; Williams v. Williams, 8 Ill. App.2d 1, 130 N.E.2d 291; Nelson v. Nelson, 180 Or. 275, 176 P.2d 648; Wacker v. Wacker, 279 Ky. 19, 129 S.W.2d 1043.
It would serve no useful purpose to detail in this opinion the sordid record that the juvenile judge considered in reaching his decision declaring the three children of appellant and his wife to be dependent children and determining that the best interest of the children would be to take them from parental control and place them with a child placing agency for permanent adoption.
The F.B.I. record and also the social summary of the father and the mother of these children show continuous breaches with the law enforcement agencies of Georgia and serving of terms in the state prison and correctional institutions.
We hold, under the record in this case, that the lower court should be affirmed.
Affirmed.
SMITH, J., and McMULLEN, NEIL, Associate Judge, concur.