**In the Interest of B.O.W., a child.**
No. 73-2874 D.
Circuit Court, Dade County.

February 7, 1974.

A. Lester Langer, South Miami, for the Division of Family Services, petitioner.

Warren S. Schwartz, Legal Services of Greater Miami, Inc., for the respondent.

WILLIAM E. GLADSTONE, Circuit Judge.

This cause came on for final hearing on October 1, 1973. Prior to final hearing the respondent filed a motion to designate the standard of proof and a motion to dismiss this cause, and the court, having heard the arguments of counsel for both the petitioner and the respondent and having reviewed the memoranda of law filed herein, indicated that both motions would be denied. The court thereupon heard the testimony and reviewed the evidence, upon which the court found that the petitioner had proved by a preponderance of the evidence that the allegations of the petition as amended were true and that B.O.W. was a dependent child within the meaning of Chapter 39 of the Florida Statutes and should be so adjudicated and committed to the temporary custody of the Florida State Division of Family Services. The court found that B.O.W. was a dependent child as defined by the statute in that his condition or environment was such as to injure or endanger his welfare because he was a child battered and abused by an emotionally disturbed mother. B.O.W. has remained in the temporary custody of the Division of Family Services since this court's detention order of July 30, 1973; and his mother has in the interim been participating in counseling for her condition which gave rise to her son's dependency.

By this order B.O.W. will be committed to the temporary custody of the Division of Family Services until his mother can timely present proof of her rehabilitation to the most desirable end that this child may be placed back in his mother's custody. The welfare and safety of the child, however, is paramount. If the mother shall not be a fit parent after such a period of time, if it shall appear to be in the manifest best interest of the child that he be given substitute permanent parents, the court, at that unhappy moment, will entertain a petition for permanent commitment to the Division of Family Services.

The motion to dismiss attacks Florida's dependency statute upon constitutional grounds. The law involved in bringing this court to a ruling upon that motion is complicated; the court has attempted, since the presentation of the motion, to research that law in detail; and because of the importance of the constitutional question, the court will review its research in detail in this order.

The constitutionality of Florida Statute 39.01 (10) [1] will be discussed first by examining the fundamental right involved, and the fundamental right will be analysed in light of whether or not the legislature has dealt with it in accordance with the mandates of the substantive due process, equal protection and procedural due process clauses in the 14th Amendment to the United States Constitution. Lastly, the facts of the case at bar will be applied to the statute in question in determining whether or not B.O.W. is a dependent child.

---

1. Fla. Stat. §39.01(10) — Dependent child means a child who:

(a) Has been abandoned by his parents or other custodian, or

(b) For any reason, is destitute, homeless, or

(c) Has not proper parental support, maintenance, care or guardianship, or

(d) Because of the neglect of his parents or other custodians is deprived of education as required by law, or medical, psychiatric, psychological, or other care necessary for his well being, or

(e) Is living in a condition or environment such as to injure or endanger his welfare, or

(f) Is living in a home which, by reason of the neglect, cruelty, depravity or other adverse condition of a parent, or other person in whose care the child may be, is an unfit place for him, or

(g) Is surrendered to the Division of Family Services or a licensed child placing agency for the purpose of adoption.

The statute under consideration seeks to establish the requisite criteria to determine if a child is to be found dependent. In making the determination that §39.01(10) is constitutionally sound, the court has reviewed the significant developments regarding the rights afforded by the due process clause, and has viewed the Florida statute in question against the constitutional tests which have been applied to the due process and equal protection guarantees.

### Substantive due process and equal protection

The first question is whether the right of a family to be free from unreasonable legislative action is a *fundamental right,* i.e., "a right implicit in the concept of ordered liberty." Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937); Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705 (1973). If such right is deemed to be fundamental, the court is then directed to apply a specific type of test to establish whether the statute under consideration comports with the requirements of the due process clause. The decisions of the Supreme Court of the United States are replete with case analyses of exactly which personal rights can be deemed "fundamental." For example, there exists a freedom of choice in the basic decisions of one's life respecting, inter alia — the liberty to marry a person of one's own choosing, Loving v. Virginia, 388 U.S. 1. 87 S.Ct. 1817, 18 L.Ed. 2nd 1010 (1967); the right of procreation Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); the privacy of marital relations, Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); the fundamental liberty to educate one's children as one chooses, Pierce v. Society of Sisters, 266 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); and ". . . the right of the individual . . . to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, . . . and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men." Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042, 1045 (1923). Accordingly, this court finds no difficulty in concluding that the right to raise a family and the freedom for parents and children to enjoy each others' love, affection, care, and association are inherent fundamental rights squarely within the protection of the due process clause.

However, the characterization of a right as "fundamental" does not necessarily mean that the state cannot validly regulate the exercise of such rights. The constitution speaks of liberty and prohibits the deprivation of liberty *without* due process of law; the constitution does not provide for absolute and uncontrollable liberty. Such liberty "requires the protection of law against the evils which menace the health, safety, morals, and welfare of the people. Liberty

under the constitution is thus necessarily subject to the restraints of due process." West Coast Hotel Co. v. Parrish, 300 U.S. 379, 391, 57 S.Ct. 578, 581, 81 L.Ed. 703, 708 (1936). In each case it must be determined what type of restraints are permissible to the state consistent with the due process clause. At best, this is an extremely difficult question, mainly because of *Roe v. Wade,* supra. Until that decision, when a statute was attacked as an unconstitutional deprivation of *substantive* due process, the traditional test of "reasonableness" had consistently been applied by the Supreme Court.

"The liberty secured by the constitution . . . is not an absolute right in each person to be, at all times and in all circumstances, wholly free from restraint . . . The possession and enjoyment of all rights are subject to such *reasonable* conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, and good order and morals of the community. Even liberty itself, the greatest of all rights is not an unresrticted license to act according to one's own will . . . It is then liberty regulated by law." Jacobson v. Massachusetts, 197 U.S. 11, 25-7, 25 S.Ct. 358, 361, 49 L.Ed. 643, 650 (1905) (emphasis added) (upholding a state statute which required vaccination for smallpox) accord: Meyer v. Nebraska, supra; Pierce v. Society of Sisters, supra; Buck v. Bell, 274 U.S. 200, 47 S.Ct. 584, 71 L.Ed. 1000 (1927); "Liberty under the constitution is thus necessarily subject to the restraints of due process, and regulation which is reasonable in relation to its subject and is adopted in the interest of the community is due process." West Coast Hotel Co. v. Parrish, supra at 391, 57 S.Ct. at 581.

In 1963, the Supreme Court in Ferguson v. Skrupa, 372, U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93, purported to sound the death knell for the doctrine of substantive due process. Roe v. Wade, supra (Stewart, J. concurring). "Courts do not substitute their social and economic beliefs for the judgment of legislative bodies who are elected to pass laws . . . we refuse to sit as a superlegislature to weigh the wisdom of legislation and we emphatically refuse to go back to the time when courts used the due process clause to strike down state laws" (in reference to upholding the constitutionality of a Kansas debt adjusting statute). Ferguson v. Skrupa, supra at 730, 83 S.Ct. at 1031, 10 L.Ed.2d at 98 (1963). As a result, the Supreme Court has turned to the vehicle of the equal protection clause of the 14th Amendment guarantees. When a fundamental right is involved and the state attempts to affect the exercise thereof by legislation, the state must show that the statute has been narrowly and precisely drawn and that a "compelling state interest" has been shown in support of the limitation. See Kramer v. Union Free School District, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969). Whereas "reasonableness" is the test under the substantive due process cases,

"compelling state interest" is the test traditionally used in the equal protection clause cases. For example, the constitutionality of the fundamental right of interstate movement must be judged by the stricter standard of whether the regulating statute promotes a "compelling state interest." Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965); Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963).

A problem has emerged with the court's decision in Roe v. Wade, supra (1973). In *Roe,* a Texas abortion statute was struck down as being violative of substantive due process because Texas could not show a "compelling state interest" to support its legislation. Thus it seems that the equal protection test, i.e., "compelling state interest", has been transported into the realm of substantive due process despite the fact that the "reasonableness" test had been the hallmark of substantive due process throughout the history of American constitutional law. "Unless I misapprehend the consequences of this transplanting of the 'compelling state interest test,' the court's opinion will accomplish the seemingly impossible feat of leaving this area of the law more confused than it found it." Roe v. Wade, supra 93 S.Ct. at 737 (Rehnquist, J. dissenting).

The respondent in the instant case is the mother of a one year old baby boy. The state of Florida is seeking to have this child declared dependent. The respondent has filed a motion to dismiss the dependency petition on the ground that the Florida dependency statute allegedly violates the due process clause. Since the respondent has not clearly stated whether the attack is based on substantive or procedural due process, this court will rule on both issues. To this point, the court has discussed substantive due process. It is clear that no matter which test (reasonableness or compelling state interest) is to be applied with regard to examining the constitutionality of §39.01(10), the statute is not violative of the substantive due process or the equal protection clauses. The Florida dependency statute is a reasonable regulation of conduct in which the state has a compelling state interest. The juvenile and family court division of the circuit court, which has jurisdiction of cases brought under this statute, is a unique court. It is not a punishing court — quite the opposite. Its main purposes, and the purpose of the Florida Juvenile Act, are to utilize all of the facilities which Florida offers to juveniles in the hope of rehabilitating adjudicated delinquents, so that a term in prison will never become a part of their lives, and to preclude the virulent mistreatment of helpless dependent children, whether parentally inflicted or otherwise. The proceedings are civil rather than criminal in nature. Thousands of cases annually come before this court so that it has an ever expanding experience

of the sometimes harsh reality of life at the human as well as the legal level. The purpose of declaring a child to be dependent is not to condemn or punish the parent but to make certain that the child is at least given the chance to grow up in an environment that is not destructive. This, too, is a fundamental right — and it belongs exclusively to the child. A child has a fundamental right to be given the opportunity to be happy and healthy, and to mature into independent, well-adjusted adulthood. Nothing exists which could be of more paramount state importance than to protect and safeguard the rights of children who, because of their very status in life, are physically or mentally unable to take care of themselves. "It is in the interest of youth itself, and of the whole community, that children be both safeguarded from abuses and given opportunities for growth into free and independent well-developed men and citizens." Prince v. Massachusetts, 321 U.S. 158, 165, 64 S.Ct. 438, 442-3, 88 L.Ed. 645, 652 (1943). To label an infant "dependent" is not for the purpose of stigmatizing or marking him for life. It is the opinion of this court that the so-called "rights of parents" are of lesser importance than the obligations of parents, and certainly secondary to the fundamental rights of their children. The dependency statute is a reasonable way to achieve this goal of protecting the rights of children.

Furthermore, this court also holds that there is a compelling state interest to legislate the fundamental right to maintain the integrity of the family as a unit. If an adjudication of dependency can save children — the future adults of our country — from becoming the helpless victims of inhuman treatment, the state surely can be said to have a compelling interest in preserving the health of not only its own future but also of the individuals who will comprise the state as a whole. "It is estimated that one out of every two battered children *dies* after being returned to his parents."[2]

This statistic in and of itself supplies the requisite compelling state interest, i.e., to eliminate child abuse through the vehicle of a dependency statute.

### Procedural due process

Florida Statute 39.01(10) has also been attacked by the respondent as being violative of procedural due process. The thrust of the respondent's argument in this regard is that due to the alleged

---

2. *Pediatrics,* (published by American Academy of Pediatrics), Supplement to Volume 51, Number 4, Part 2, page 780, April, 1973, "Symposium on Child Abuse," Vincent J. Fontana, M.D., Director of Pediatrics, St. Vincent's Hospital & Medical Center; Medical Director, New York Foundling Hospital; Chairman, Mayor's Task Force on Child Abuse & Neglect, N.Y., N.Y.

vagueness of the statutory language, she was given insufficient notice as to what constitutes dependency. Notice has been deemed to be an essential element of procedural due process in that it affords a citizen the chance to defend the charges brought against him.

"Notice is required in a myriad of situations where a penalty or forfeiture might be suffered for mere failure to act . . . where a person did not know the duty . . . and where there was no proof of probability of such knowledge he may not be convicted consistently with due process." Lambert v. California, 335 U.S. 225, 228, 78 S.Ct. 240, 243, 2 L.Ed.2d 228, 231 (1957).

The test for "void for vagueness" has been stated in a number of different forms, but the basic theme of requiring a statute to be reasonably understandable to the ordinary man runs throughout these various tests. Any statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates due process of law. Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 1067 (1925). A statute will be held void for vagueness if it leaves open the widest conceivable inquiry, the scope of which no one can foresee and the result of which no one can foreshadow or adequately guard against. It will be void if it demands exaction of obedience to a rule or standard which is so vague and indefinite as really to be no rule or standard at all. A.B. Small Co. v. American Sugar Refining Co., 26 U.S. 233, 45 S.Ct. 295, 69 L.Ed. 589 (1924). The law must be one which carries an understandable meaning with legal standards which courts must enforce. Giaccio v. Pennsylvania, 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966). The underlying principle is that no man should be held responsible for conduct which he could not reasonably understand to be proscribed. U.S. v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954). On the other hand, if the general class of offenses to which the statute is directed is reasonably understandable, the statute will not be struck down as vague even though marginal cases could be put where doubts might arise. If this general class of offenses could be constitutionally definite by a reasonable construction of the statute, then the court is under a duty to give the statute that construction. U.S. v. Harriss, supra; U.S. v. Wurzbach, 280 U.S. 396, 50 S.Ct. 167, 74 L.Ed. 508 (1929).

In the cases where the constitutionality of dependency or neglect statutes has been questioned, an overwhelming majority of precedents have upheld those statutes which were worded similarly to Florida's dependency law. In view of these numerous state judgments (discussed infra) and in light of the constitutional requirement of sufficient notice as directed by the Supreme Court, it is

held by this court that §39.01(10) is not violative of procedural due process and cannot be deemed to be void for vagueness.

The statute under consideration in Jehovah's Witnesses v. King County Hospital, 278 F.Supp. 488 (N.D. Wash. 1967), affirmed, 390 U.S. 598, 88 S.Ct. 1260, 20 L.Ed.2d 158 (1967), described a dependent child as "Any child under 18 . . . [w]ho is grossly and wilfully neglected as to medical care for his well being." [See Fla. Stat. §39.01(10)(d)]. The federal district court upheld (and was later affirmed by the U.S. Supreme Court) the constitutionality of the statute and permitted a finding of dependency and sanctioned the trial court to "make such an order for the care, custody, or commitment of the child as the child's welfare in the interest of the state requires . . . The [fundamental] right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death." Jehovah's Witnesses v. King County Hospital, supra at 495, 504.

The leading decision in Maryland is In re Barbara Jean Cager, et al., 251 Md. 473, 248 A.2d 384 (Md.App. 1968). A neglected child in Maryland is one who is— "without proper parental guardianship" [See Fla. Stat. §39.01(10)(c)]; "whose parent, guardian, or person with whom the child lives by reason of cruelty, mental incapacity, immorality or depravity, is unfit to care properly for such child" [see Fla. Stat. §39.01(10)(f)] "whose parent . . . neglects or refuses when able to do so, to provide necessary medical, surgical, institutional or hospital care for such child" [see Fla. Stat. §39.01(10)(d)]; "who is in such condition of want or suffering, or is under improper guardianship or control or is engaged in such occupation as to injure or endanger the morals or health of himself or others" [see Fla. Stat. §39.01(10)(e)]. These statutory provisions were upheld because "we think that a person of *ordinary intelligence could determine* from the statute with a *fair degree of precision whether* a child was or was not neglected . . ." In re Barbara Jean Cager, 248 A.2d at 389 (emphasis added). See also People v. Vandiver, 51 Ill.2d 525, 283 N.E.2d 681 (1971); Orr v. State, 123 N.E. 470 (Ind.App. 1919) — dependent child is one who is "destitute, homeless, or abandoned" [see Fla. Stat. §39.01 (10)(a&b)]; State of Iowa ex rel. Joseph Gering in re Jo Ann Bird, 250 Iowa 730, 93 N.W.2d 100 (1959), where a dependent child is "any child who for any reason is without proper parental care or guardianship" [see Fla. Stat. §39.01(10)(c)]; In re Jackson, 497 P.2d 259 (Wash.App. 1972), upheld dependency statute which included "any child under 18 who has no parent, guardian, or other responsible person" [see Fla. Stat. §39.01(10)(b)] "or who has no parent or guardian willing to exercise or is capable of exercising proper parental control" [see Fla. Stat. §39.01(10)(c)]; In re

Neglected Child, 130 Vt. 525, 296 A.2d 250 (1972) — In Vermont, a child is neglected if he has been "abandoned by his parents, guardian or other custodians" [see Fla. Stat. §39.01 (10) (a)] or is "without proper parental care or control" [see Fla. Stat. §39.01 (10) (c)] or "without education, medical or other care or control necessary for his well-being" [see Fla. Stat. §39.01 (10) (d)]. "The ability of the state to separate neglectful parents from their children has been recognized as a legitimate state interest . . . [and] the due process clause . . . acts as a safeguard to insure the rights of parents are not indiscriminately encroached upon . . . The purpose of the neglected child statute is not to condemn the child or his parents . . . Rather, the statute is enacted to attempt to rectify a most difficult situation which confronts an often helpless infant." In re Neglected Child, supra at 253-4.

The Supreme Court of Oregon authored an excellent opinion in which it upheld the constitutionality of the Oregon dependency statute. A dependent child in Oregon is one — "whose condition, behavior, or circumstances are such as to endanger his own welfare or the welfare of others [see Fla. Stat. §39.01 (10) (e)] or either his parents or custodians have abandoned him, [see Fla. Stat. §39.01 (10) (a)] failed to provide him with the support or education required by law, [see Fla. Stat. §39.01 (10) (c&d)] subjected him to cruelty or deprivation, or failed to provide him with the care, guidance, and protection necessary for his physical, or emotional well-being" [see Fla. Stat. §39.01 (10) (d)].

"The legislature and this court do not desire to sever parental rights for any conduct by the parents unless such conduct affects the child's welfare . . . In our opinion to accomplish its primary purpose of caring for the welfare of the child, the legislature would have *extreme difficulty being more specific* . . . Because the statute does not specify, the inference is that it is conduct detrimental to any major aspect of the child. This is undoubtedly what the legislature intended. We would hope . . . there is *no need for any explicit statute to spell out how poorly the parents . . . can treat their child before risking loss . . . the ordinary parent should 'get the message' from the statute as it is now worded.*" State v. McMaster, 259 Ore. 291, 299-300, 486 P.2d 567, 570-1 (1971), (emphasis added); accord, State ex rel. Juvenile Dept. of Clackamus Co. v. Wiese, 498 P.2d 813 (Ore. App. 1972). See also Ryan v. Ryan, 277 So.2d 266 (Fla. 1973).

"It is the duty of a court to recognize a reasonable construction of a statute which supports its constitutionality. The legislature does not have to give a detailed and carefully outlined plan of each and every step to be followed in each and every circumstance which could arise." Ryan v. Ryan, supra at 271.

Florida's position, as highlighted through Ryan, is consistent with the cases just discussed. In State v. Magee, 259 So.2d 139 (Fla. 1972), it was held that not every detail is required to be set forth, even in a criminal statute, provided that the prohibited conduct is in such language that is understandable by the average citizen. Similarly, impossible standards are not required and due process will not be violated where the statutory language conveys a "definite warning" as to proscribed conduct. Smith v. State, 237 So.2d 139, 141 (Fla. 1970). The fact that specific acts are not enumerated, "an impossible task at best," does not render a statute void for vagueness, provided that the conduct described by the statute can be determined with reasonable certainty in its plain and ordinary meaning by reasonable men. Subsequent to being attacked on "void for vagueness" grounds, the Florida Supreme Court upheld the constitutionality of the provisions of a child abuse statute (Fla. Stat. §828.04). Campbell v. State, 240 So.2d 298 (Fla. 1970), appeal dismissed, 402 U.S. 936, 91 S.Ct. 1634, 29 L.Ed.2d 105 (1970). See also Ryan v. Ryan, supra (upholding Florida's "no-fault" marriage dissolution law). Because the specific type of dependency under consideration in the instant case could easily result from a violation of §828.04, i.e., abusing a child may lead to dependency, this court finds §39.01(10) to be constitutional. Accordingly, the court holds that by following what appears to be the majority view in this country, §39.01(10) is not void for vagueness, and therefore, it complies with procedural due process. The statute is constitutional.

The respondent's other contention is that even if §39.01(10) (e) — the basis for this dependency petition — is not violative of due process, the entire subsection 10 should fall because *certain parts* of §39.01(10) are definitely void for vagueness. This argument is without merit. Accepted principles of constitutional law dictate that a court will "never anticipate a question of constitutional law in advance of the necessity of deciding it; ... [and] never ... formulate a rule of constitutional law broader than is required by the *precise facts* to which it is to be applied." Liverpool, New York & Philadelphis S.S. Co. v. Commissioner of Emigration, 113 U.S. 33, 39, 5 S.Ct. 352, 28 L.Ed. 899, 901 (1884) (emphasis added). Kindred is the rule that "one to whom application of a statute is constitutional will *not* be heard to *attack* the statute on the ground that *impliedly* it *might* also be taken as applying to other persons or *other situations* in which its application *might* be unconstitutional." U.S. v. Raines, 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524, 529 (1959) (emphasis added). Thus, a court may *not* pronounce a statute void as being irreconcilable with the constitution merely because some hypothetical situation *could* be conceived which might

render unconstitutional the statute under consideration. It would be extremely undesirable for the court to consider every conceivable situation which might possibly arise in the application of complex legislation. U.S. v. Raines, supra. The Supreme Court has ruled that it definitely will not decide abstract questions merely because of the effect such judgments *might* have upon future actions in similar circumstances. Little v. Bowers, 134 U.S. 547, 10 S.Ct. 620, 33 L.Ed. 1062 (1889); accord, Fortson v. Toombs, 379 U.S. 621, 85 S.Ct. 598, 13 L.Ed.2d 527 (1964) (Goldberg, J. dissenting). Moreover, the possible unconstitutionality of certain language in an otherwise valid statute is not sufficient to render the remainder of the statute invalid. Driver v. Van Cott, 257 So.2d 541 (Fla. 1971). It is entirely possible for this court to envision a situation in which parts of §39.01(10) could be found to be vague. A phrase such as "other adverse condition" might have been omitted altogether by the legislature. See Driver v. Van Cott, supra. But as stated in U.S. v. Raines, supra, it is not within the competency of the court to envision any facts or situations other than the ones in actual controversy; nor would the entire statute fail as a result of such an invalid clause. Driver v. Vann Cott, supra. Accordingly, this court finds that due to the precise facts in the case under consideration. Fla. Stat. §39.01(10) is not unconstitutional.

### The quantum of proof required

The respondent had moved that the court designate the standard of proof to be used at the dependency trial. She seeks to have the court construe the due process clause of the 14th Amendment to the United States Constitution and Article I, §9 of the Florida Constitution in such a manner as to require that the proof of every allegation necessary for a finding of dependency be proved to the exclusion of and beyond every reasonable doubt. At the hearing, the respondent orally amended the written motion and alleged that Fla. Stat. §39.09(1)(b) is unconstitutional on its face in that the same is repugnant to the due process clauses of both the federal and state constitutions. Upon consideration of the arguments and memoranda of law submitted by counsel, the court concludes and rules that the proper standard of proof to be used in dependency hearings is the "preponderance of the evidence" standard as set forth clearly in §39.09(1)(b), and that standard meets constitutional requirements. It should be noted that §39.11(2) & (2)(d) [3]

---

3. Fla. Stat. §39.11(2) & (2)(d): "When a child shall be adjudicated by a court to be a dependent child, the court having jurisdiction of the child shall have the power, by order, to: ... (d) *Permanently* commit the child to a licensed child placing agency, or the division of family

under which a child may be *permanently* taken from his parents, does require a higher standard of proof than a preponderance of the evidence. A finding of dependency by a preponderance of the evidence is used only when the state seeks *temporary* custody of the child (as in the case at bar). See also Renfro v. Jackson County Juvenile Court, 369 S.W. 2d 616 (Mo. App. 1963); White v. DeSpain, 453 S.W. 2d 689 (Mo. App. 1970); In re C., 468 S.W. 2d 689 (Mo. App. 1971); S.K.L. v. Smith, 480 S.W. 2d 119 (Mo. App. 1972); In re Sego, 7 Wash. App. 457, 449 P.2d 881 (Wash. 1972).

### Findings of fact and ruling

The facts in the case at bar which brought about this constitutional controversy must be examined in light of all which has been previously discussed. What we are concerned with now is the most glaring of all types of dependency — child abuse. The court finds that the infant, B.O.W., was eight months old when a dependency petition was brought by the Division of Family Services. The child had been admitted to Broward General Hospital with a diagnosis of a spiral fracture of the right humerus. After further x-rays were taken, besides the fractured arm, two linear skull fractures were also found. The mother of B.O.W. gave conflicting stories on how the arm had been injured some days earlier and, until the x-rays were performed, had purportedly not even been aware of the skull fractures or other injuries to the infant's head. Hospital records indicated that two years prior to this incident, the brother of B.O.W. (5 months old at that time) had also been admitted to Broward General Medical Hospital. The mother had admitted inflicting the injuries on the older child, namely lesions on the frontal aspect of the trunk and upper abdomen as well as a few bruise marks on the right side of the baby's face. Upon the conflicting history and "extremely unusual" nature of the injuries in the instant case and the history of prior child abuse by the mother inflicted upon a sibling of this child, the medical expert in this cause diagnosed B.O.W.'s

services, willing to receive the child for subsequent adoption if the court finds that the child has been abandoned by the natural parent or parents, and legal guardian if any, of the child; or that the parent or parents, and legal guardian if any, have *substantially and continuously* or *repeatedly* refused, or though financially able have neglected, to give the child parental care and protection; or that the parent or parents, and legal guardian if any, are unfit by reason of their conduct or condition, which is *seriously* detrimental to the child's welfare; or if the parent or parents have voluntarily executed a written surrender of the child for subsequent adoption in the form required by section 39.11(7)(c) hereof; and if the court finds that it is *manifestly to the best interest of the child* to do so." (emphasis added).

condition as "the battered child syndrome," and this court finds that B.O.W. is the victim of parental child abuse and thus a dependent child. The evidence in this case was clear; it was even *beyond* a preponderance of the evidence; and, indeed, the only evidence before the court was of child abuse.

Section "e" of §39.01(10) was the basis for the petition to declare B.O.W. to be a dependent child. "A dependent child means a child who — "(e) is living in a condition or environment such as to injure him or endanger his welfare . . ." What condition could be more injurious to the welfare of an eight month old baby than to reside with a parent who appears to this court to have no control over her actions, who has admitted to a previous instance of child abuse, and who offers conflicting stories of how this child might have sustained his unusual and severe injuries? There can be no doubt that the legislature, in enacting §39.01(10), had in mind the desire to purge the rampant growth in the number of instances of abused children who are unable to tell their own story or to do anything but helplessly endure being the innocent victims of parental sickness. Fla. Stat. §39.001 sets forth the purpose of Chapter 39. "The purpose of this chapter is . . . to assure all children brought to the attention of this court . . . because of neglect or mistreatment by those responsible for their care, the care, guidance and control, preferably in each child's own home, which will conduce to the child's welfare and the best interest of the state." With these basic precepts in mind, the facts presented in the instant case show by a preponderance of the evidence that the infant, B.O.W., is dependent. In fact (as previously noted) the only evidence presented in this case was the evidence put on by the state. The court was shown no proof to the contrary which might rebut a finding of dependency. It is important to keep in mind that the adjudication of dependency in this case is not a punishment either for the parents of B.O.W. or for the child himself. The state is given temporary custody of the child, and during that time the injuries sustained by B.O.W. will be properly cared for and the mother, as she has voluntarily agreed, is receiving care and counselling in an attempt to enable her to overcome her emotional problems. If the emotional difficulties which have plagued the mother are eliminated within a period of time reasonable to the child's best interests, she will be able to regain custody of her child and the purpose of the dependency statute will have been fulfilled.

> "It may well be . . . that with the passage of time the mother's health [mental problems here] may be so restored that she can assume the duties and responsibilities of properly caring for and rearing her son. If so, every consideration should be given to her claim to have the custody and control of her only child." *In re C.E.S.*, 106 So.2d 610, 614 (Fla. 1st Dist. 1958).

Until that time, however, this court will and should, in every instance, be guided by "an effort to consider first and primarily the welfare of the child. While the rights of the parents must, of course, always be observed, nevertheless, their parental prerogatives are to be evaluated in the light of what appears to be the best interest of the child." Noeling v. State, 87 So.2d 593, 596 (Fla. 1956). When a parent is clearly incapable of properly caring for her child because of mental problems, an adjudication of dependency must be made for the best interests of all parties. Mitchell v. State, 142 So.2d 740 (Fla. 2d Dist. 1962). This adjudication is especially essential when the result is a battered child. The sooner the difficulties can be resolved, the earlier the desired result of parent and child being brought back together again may be achieved.

In the case at bar, the battering of B.O.W. most assuredly satisfies the legal criteria demanded by the dependency statute. In addition, the objective standard that describes dependency is one which ordinary men would agree upon and could reasonably understand. A reasonable parent — and a trial judge — would consider B.O.W. to have been terribly mistreated in violation of the law. A reasonable parent would know that Florida's criteria for determining dependency have, unfortunately, been met here. The court does not desire to see the "one out of every two battered children are killed" statistic borne out in this or any other case.

It is therefore ordered and adjudged that B.O.W. is adjudicated to be a dependent child and is committed to the temporary custody of the Division of Family Services for further planning, placement, care and treatment. This cause shall recur for further dispositional hearing on April 3, 1974, or at such earlier date as any interested party may request, upon proper notice.